**DENT PHELPS R–III SCHOOL DISTRICT, et al., Plaintiffs–Appellants,**

v.

**HARTFORD FIRE INSURANCE COMPANY, Defendant–Respondent.**

No. 18798.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 19, 1994.

Motion for Rehearing or Transfer
Denied Feb. 14, 1994.

Application to Transfer Denied
March 22, 1994.

Daniel T. Rabbitt, Robyn R. Lundt, Rabbitt, Pitzer & Snodgrass, St. Louis, for plaintiffs-appellants.

John G. Doyen, Aaron I. Mandel, Brinker, Doyen & Kovacs, Clayton, for defendant-respondent.

SHRUM, Judge.

On January 30, 1992, a fire destroyed buildings and personal property owned by Dent Phelps R–III School District (District).[1] Alleging that its losses were insured by Hartford Fire Insurance Company (Hartford) but that Hartford had denied its claim, the District sued for breach of contract. Hartford filed a "Motion To Dismiss ... Or For Summary Judgment." In its motion, Hartford claims that the District is neither the named insured nor a third-party beneficiary of the insurance contract. Each party filed a memorandum with accompanying documents to support their respective positions on this issue. The trial court then dismissed the District's action. This appeal followed.

We reverse and remand.

## STANDARD OF REVIEW:

### JUDGMENT ON PLEADINGS OR SUMMARY JUDGMENT

■ Before reciting pertinent facts or discussing the substantive issues raised in this appeal, we first determine the standard of review. *Terre Du Lac Ass'n v. Terre Du Lac, Inc.,* 737 S.W.2d 206, 210, 74 A.L.R.4th 141 (Mo.App.1987). The standard of appellate review is significantly different for summary judgment and dismissal of a claim. *Magee v. Blue Ridge Professional Bldg.,* 821 S.W.2d 839, 842[2] (Mo. banc 1991). In reviewing an order sustaining a motion to dismiss, all facts alleged in the petition are deemed true and plaintiff is given the benefit of every reasonable intendment. *Id. See* also *Main v. Skaggs Community Hosp.,* 812 S.W.2d 185, 186[1] (Mo.App.1991). When reviewing a summary judgment, an appellate court looks not just to the petition but to all

pertinent materials presented to the trial court to determine if there is any material fact issue and that the moving party was entitled to judgment as a matter of law. *Magee,* 821 S.W.2d at 842[2]. *See Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 243–44[4] (Mo. banc 1984); Rule 74.04(c).

The District argues that since the trial court said it granted only Hartford's motion to dismiss, the scope of review for granting of a motion to dismiss applies. Hartford suggests, however, that the summary judgment standard of review is called for because the motion to dismiss and motion for summary judgment were combined and all pertinent materials were presented to the trial court. *See Board for Architects v. Earth Resources,* 820 S.W.2d 505, 507[2] (Mo.App. 1991). To support its position, Hartford points out that the District has included in its brief facts taken from portions of the legal file other than the pleadings, specifically documents attached to the District's memorandum filed in opposition to Hartford's motion.[2]

Under Rule 55.27(b), "[i]f on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 74.04."

*Board for Architects,* 820 S.W.2d at 507 (quoting *Lee v. Osage Ridge Winery,* 727 S.W.2d 218, 224 (Mo.App.1987)). *See Boyer v. Carondelet Sav. & Loan Ass'n,* 633 S.W.2d 98, 100 n. 2 (Mo.App.1982).

1. Additional plaintiffs are individuals named in their capacity as school board directors. Herein plaintiffs-appellants are referred to collectively as "the District" unless otherwise indicated.

2. The record on appeal includes the District's second amended petition, Hartford's motion to dismiss or for summary judgment, Hartford's memorandum in support of motions, and the District's memorandum in opposition to Hartford's motion to dismiss or for summary judgment. Attached to the District's memorandum are (a) Articles of Association of the Missouri United School Insurance Council and amend-

ments thereto, (b) affidavit of Nancy A. Crampton, president of the District's board of directors, and (c) Hartford's letter of July 17, 1992, by Frank Bair, General Adjuster for Hartford, directed to Nancy A. Crampton.

In addition, pursuant to Rule 81.12(e), the parties' attorneys stipulated to the filing of a supplement legal file. It contains copies of five exhibits originally part of the District's second amended petition but omitted from the legal file and an affidavit by Frank Bair attached to Hartford's motion to dismiss or for summary judgment.

Neither party lodges an objection to the documents filed with this court and, in fact, both parties, in their briefs, refer to documents that are not part of the pleadings. Such documents appear to have been before the trial judge; they were attached to motions or memoranda filed in the circuit court. Accordingly, we proceed upon the assumption that all documents filed with us were considered in their entirety by the trial court in arriving at its decision in this case. *See Brown v. Mercantile Bank of Poplar Bluff,* 820 S.W.2d 327, 331 n. 1 (Mo.App.1991).

■ Since the motions to dismiss and for summary judgment were combined, and materials that the parties deemed pertinent (i.e., affidavits, documents accompanying memorandum, etc.) were presented both to the trial court and to us, without objection, and since neither party suggests that it lacked reasonable opportunity to present pertinent materials, we review the trial court's order under a summary judgment standard of review. *Board for Architects,* 820 S.W.2d at 507[2]; Rule 55.27(b).

■ Under the summary judgment standard, we review the record in the light most favorable to the party against whom the judgment was entered, according the nonmovant the benefit of all reasonable inferences from the record. *Andes v. Albano,* 853 S.W.2d 936, 940[4] (Mo. banc 1993).

Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially.... The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment....

*ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376[4–6] (Mo. banc 1993) (citations omitted).

**3.** *See, e.g.,* § 537.620, RSMo Supp.1988. It provides: "[A]ny three or more political subdivisions of this state may form a business entity for the purpose of providing liability and all other insurance for any of the subdivisions upon the assess-

## FACTS

The pleadings and other documents before us reveal the following. The Missouri United School Insurance Council (MUSIC) is a "Missouri unincorporated association." Its purpose is to serve as a self-insurance association pursuant to Chapter 537, RSMo 1986.[3] Membership in MUSIC is limited to Missouri public school districts. Among its other purposes, MUSIC seeks the "prevention or lessening of casualty and property losses to political subdivisions and injuries to persons or employees which might result in claims being made against such units." The members of MUSIC intended to "create an entity ... [to] administer a Risk Management Pool and utilize such funds to ... protect ... any member of the Association Against [property losses]." Through the Articles of Association, the members empower MUSIC to "lease real property and to purchase or lease equipment, machinery or personal property necessary for carrying out the purposes of the Association." Ownership of real property is not a power given to MUSIC.

As a member of MUSIC, the District paid its annual assessment to the association for the period December 31, 1991, to December 31, 1992. In exchange, the District received "insurance coverage for ... property damage."

On January 30, 1992, a fire destroyed buildings and contents owned by the District. At the time, Hartford's "Property Excess Insurance Policy" No. 83 XLS SC1375 was in force and effect. The policy provides that (a) Hartford is the insurer, (b) Missouri United School Insurance Council, an "institutional pool," is the "Named Insured," (c) the policy period is from "12–31–91 To 12–31–92," and (d) subject to policy terms Hartford insures "against all risks of direct physical loss or damage to covered property...."

Other policy provisions read:

ment plan as provided in sections 536.600 to 537.650. Any political subdivision may join this entity and use public funds to pay any necessary assessments."

## II. LIMITS OF LIABILITY

A. This company shall not be liable under this policy for more than *$110,000,000.* for loss or damage to property covered hereunder arising from any one loss or disaster, for all coverages and locations combined nor for more than the following limits:

. . . .

5. *$15,000,000.* per occurrence per district as respects Newly Acquired Property. . . .

6. *$100,000.* per occurrence per school as respects Extra Expense.

. . . .

## III. DEDUCTIBLE

Each claim for loss or damage shall be separately adjusted and from the amount of each such adjusted loss, the sum of *$250,000.* shall be deducted.

. . . .

## IV. PROPERTY INSURED

This Policy insures:

A) All real property . . . owned by the Named Insured.

B) Tenant's improvements . . . comprising part of a building leased, rented or occupied but not owned by the Named Insured and made at the expense of the Named Insured.

C) All personal property of every description owned by the Named Insured.

D) The interest of the Named Insured in, and legal liability for personal property of others in the actual or constructive custody of the Named Insured.

. . . .

## IX. VALUATION

. . . .

The inclusion of more than one Named Insured shall not operate to increase the Company's Limit of Liability.

. . . .

## XXIV. LOSS PAYABLE

Loss, if any, shall be adjusted with and payable to the Named Insured.

A sworn proof of loss, dated June 10, 1992, was submitted by the District to both MUSIC and Hartford. In the proof of loss the District claimed that MUSIC had a $250,000 policy at the time of the loss and that Hartford had a $110,000,000 policy. The District also swore that its "Whole Loss and Damage was . . . $3,262,203.16," of which MUSIC owed $250,000 and Hartford owed $3,009,-703.16.

The District's proof of loss was rejected by Hartford's letter dated July 17, 1992. The letter cites various reasons for rejection,[4] the first of which reads: "[I]t is unclear whether Dent–Phelps R–III School District is a Named Insured and entitled to any payment under the policy."

Without a hearing, the trial court entered its order dismissing the District's petition. This appeal followed.

## DISCUSSION AND DECISION

The District charges the trial court erred in dismissing the case. It insists that, based

---

4. The final portion of the rejection letter reads, in part:

"We note . . . that your attorney filed suit against us on or about June 17, 1992 . . . only 7 days after submission of your proof of sworn Proof of Loss and before we had an opportunity to formally respond to said Proof of Loss. If you are unaware of these facts you may want to confer with your attorney about this matter.

Second, we noted that your Proof of Loss overvalues the loss for damage to the building at $2,448,227.96, because our investigation showed that such damages amounted to a much lesser figure.

Third, there is a question as to whether any action lies against us on the policy because the requirements for appraisal of the claim have not been met prior to the filing of this lawsuit.

Fourth, it is unclear at this point whether other insurance applies to this loss which would discharge or limit our liability.

Fifth, we expressly reserve our right to deny coverage on the ground that there may be a misrepresentation of the replacement costs regarding the building and contents as well as the amounts claimed for temporaries, debris removal and extra expense in your Proof of Loss.

For these reasons and for other good and valid reasons, known or unknown, based upon facts and circumstances that have arisen and that may arise, we are rejecting your submitted proof of loss at this time and reserving our rights to deny or limit our liability for coverage to you under the above-referenced policy of insurance issued to MUSIC."

on the record as submitted, Hartford has not met its burden of establishing a right to judgment as a matter of law. The import of the District's first point is that ambiguities on the face of the policy demonstrate that a genuine fact dispute exists as to the meaning of the term "Named Insured." Alternatively, in Point II, the District asserts that if it is not a named insured, it nonetheless has standing to bring suit as a creditor third-party beneficiary of the contract.

Hartford argues that the District lacks standing to sue for damages because it is not a party to the contract, nor a third-party beneficiary. Further, Hartford asserts that even if the District is a third-party beneficiary, it nonetheless lacks standing to sue Hartford because it must accept the contract as written. Pointing to the loss payable clause which says that "[l]oss, if any, shall be adjusted with and payable to the named insured," Hartford insists that "Named Insured" means only MUSIC; hence, Hartford has no obligation to negotiate with or pay the loss to the District.

■■■ The following general rules for interpretation of insurance contracts are well established.

Where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. *Rodriguez [v. General Accident Ins. Co. of America]*, 808 S.W.2d [379] at 382 [ (Mo.1991) ]; *Robin [v. Blue Cross Hosp. Serv. Inc.]*, 637 S.W.2d [695] at 698 [ (Mo.1982) ]. If the language is ambiguous, it will be construed against the insurer. *Id.* An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Rodriguez*, 808 S.W.2d at 382.

*Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302[6–8] (Mo. banc 1993). Language in an insurance policy is ambiguous if it is reasonably open to different constructions. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210[2] (Mo. banc 1992). Insurance contracts are to be given a reasonable construction and interpreted so as to afford coverage rather than defeat coverage. *Nixon v. Life Investors Ins. Co. of America,*

675 S.W.2d 676, 679[9] (Mo.App.1984). A construction or interpretation of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent. *Soukop v. Employers' Liability Assur. Corporation,* 341 Mo. 614, 108 S.W.2d 86, 92[12], 112 A.L.R. 149 (1937). Construction of insurance policy language which may render a portion of the policy illusory should not be indulged in. *Cano v. Travelers Ins. Co.,* 656 S.W.2d 266, 271[5] (Mo. banc 1983).

■■■ The position taken by Hartford demonstrates that there is, in this case, a problem of interpretation of the policy language. Giving the District the benefit of all reasonable inferences from the record, it is apparent that Hartford interprets its policy as insuring the District's property. To illustrate, Hartford does not contradict, in any fashion, the District's allegation that MUSIC obtained the policy for the District's benefit. Moreover, when Hartford rejected the District's proof of loss it did not question the District's claim that its property was insured; rather, Hartford assigned other reasons for rejecting the claim.[5] Conspicuously absent from Hartford's rejection letter is a claim that the District's property was not covered by this policy. Finally, in Frank Bair's affidavit he states:

2. I am the general adjuster who was responsible, in part, for overseeing the claim by Missouri United School Insurance Council ("MUSIC") on its policy of insurance No. 83 XLS SC1375 for a fire occurring at the Dent Phelps R–III School District on January 30, 1992.

. . . .

4. MUSIC notified Hartford that MUSIC wished Hartford to negotiate *only* with MUSIC on MUSIC's claim for this fire loss.

Absent from the affidavit, as it was from the rejection letter, is a claim by Hartford that the District's property was not covered by this policy.

From the foregoing, we conclude that Hartford interprets its policy as insuring the District's property while at the same time

**5.** See footnote 4.

insisting that policy terms mandate that Hartford negotiate and settle the claim with MUSIC only. Such position means that Hartford treats the term "Named Insured" as referring only to MUSIC when interpreting the "Loss Payable" provision of the policy but that Hartford necessarily treats the "Named Insured" as encompassing the District when it considers coverage under the "Property Insured" provision of the policy. Thus is demonstrated Hartford's uncertainty about the meaning and scope of the term "Named Insured" as used in this contract.

If, as used in the "Property Insured" provision, the term "Named Insured" is interpreted as referring to MUSIC only, then only property owned by the association is insured. Under that view, coverage is defeated for real and personal property owned or controlled by the various school districts. This stems from the fact that the "Property Insured" clause confines coverage to (a) the real and personal property owned or leased by the named insured, or (b) the personal property of others in the actual or constructive custody of the named insured.[6] Construing the term "Named Insured" so as to defeat coverage for the District's property is inconsistent with Hartford's demonstrated willingness to negotiate with MUSIC about the District's fire loss. Such a construction is also repugnant to language in the Limits of Liability clause, specifically paragraph A(6) which concerns newly acquired property of a *"district,"* and paragraph A(7) which pertains to a limit "per occurrence *per school* as respects Extra Expense."

We further observe that an interpretation of "Named Insured" that defeats coverage for property owned by the District is inconsistent with the fact the annual premium charged for this policy at its inception was $1,387,028 and that the premium was based on a total insured value of $3,467,569,914. While the record is devoid of evidence as to what property MUSIC owned—as opposed to its members—we do know from its Articles of Association that MUSIC was not empowered to own real estate.

Finally, we note that Hartford in its July 17, 1992, letter to the District acknowledged that it was "unclear whether Dent–Phelps County R–III School District is a Named Insured and entitled to any payment under the policy." We take that as an admission by Hartford that the language of its policy was ambiguous, an admission that there existed a "duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." *Peters,* 853 S.W.2d at 302[8].

We acknowledge that the term "Named Insured" generally refers only to those persons specifically designated on the face of the contract. *See American Family v. Truck Ins. Exchange,* 825 S.W.2d 687, 688[2] (Mo. App.1992). However, for the reasons discussed, we conclude that, in this case, there is a demonstrated uncertainty as to the meaning of the words "Named Insured" as used in this contract. Accordingly, the contract is ambiguous. *See Peters,* 853 S.W.2d at 302[7]. We hold that a genuine fact dispute exists as to the meaning of the term "Named Insured."

Our disposition of Point I makes it unnecessary that we discuss Point II. We reverse and remand.

PARRISH, C.J., and MONTGOMERY, J., concur.

---

**6.** Paraphrasing the property insured provision and applying Hartford's interpretation, it would read:

"IV. *PROPERTY INSURED*

This Policy insures:

A) All real property, including machinery used for the service of the building(s) and permanent fittings or fixtures attached to and constituting a part thereof, owned by the [Missouri United School Insurance Counsel].

B) Tenant's improvements and betterments to building, being fixtures, alterations, installations or additions comprising part of a building leased, rented or occupied but not owned by the [Missouri United School Insurance Counsel] and made at the expense of the [Missouri United School Insurance Counsel].

C) All personal property of every description owned by the [Missouri United School Insurance Counsel].

D) The interest of the [Missouri United School Insurance Counsel] in, and legal liability for personal property of others in the actual or constructive custody of the [Missouri United School Insurance Counsel]."