**ROBERT T. MCLEAN IRREVOCABLE TRUST U/A/D, March 31, 1999, by Linda McLean, Trustee, Plaintiffs–Appellants,**

v.

**PATRICK DAVIS, P.C., et al., Defendants–Respondents.**

**No. SD 28613.**

Missouri Court of Appeals, Southern District, Division two.

Jan. 26, 2009.

Rehearing Denied March 2, 2009.

788

Edward F. Luby, St. Louis, MO, for Appellants.

Joseph C. Blanton Jr., Sikeston, MO, for Respondents.

DON E. BURRELL, Presiding Judge.

Linda McLean ("Appellant"), trustee of the Robert T. McLean Irrevocable Trust ("the trust") and mother of trust beneficiary Robert McLean ("Beneficiary"), brought various tort claims against several predecessor trustees and attorney J. Michael Ponder ("Respondent"), the "Trust Protector," alleging they had improperly administered the trust and depleted its assets. Respondent filed a motion to dismiss or, in the alternative, for summary judgment that was granted by the trial court. Because we find Respondent did

not establish that he was entitled to a judgment in his favor as a matter of law on each and every claim brought against him, we reverse and remand.

## I. Standard of Review

■ Our first task is to determine the applicable standard of review. In this case, the trial court purportedly granted *both* Respondent's motion to dismiss and his alternative motion for summary judgment. While appellate review of the grant of either a motion to dismiss or for summary judgment is *de novo, Jordan v. Willens,* 937 S.W.2d 291, 293 (Mo.App. W.D. 1996), there is a difference between the two when it comes to determining the appropriate lens through which we are to view the facts. *See Magee v. Blue Ridge Prof'l Bldg. Co.,* 821 S.W.2d 839, 842 (Mo. banc 1991).

■ When reviewing the grant of a motion to dismiss, all facts alleged in the petition are deemed true and construed liberally in favor of the plaintiff. *Dent Phelps R–III School Dist. v. Hartford Fire Ins. Co.,* 870 S.W.2d 915, 917 (Mo.App. S.D.1994). If, on the other hand, a defendant goes beyond an attack based solely on the face of the petition and files a motion for summary judgment, the plaintiff cannot rest on the averments in its petition and "an appellate court looks not just to the petition but to all pertinent materials presented to the trial court to determine if there is any material fact issue and that the moving party was entitled to judgment as a matter of law." *Id.* (citing *Magee,* 821 S.W.2d at 842); Rule 74.04(c).[1]

Here, Respondent's motion to dismiss was combined with an alternative motion for summary judgment. Attached to that motion was an exhibit (a copy of the trust)

---

1. Unless otherwise indicated, all references to rules are to Missouri Court Rules (2008) and all references to statutes are to RSMo 2000.

and a statement of uncontroverted facts with a supporting affidavit. Appellant's response admitted these uncontroverted facts and also included several exhibits of her own.

■■ Generally, a trial court must give notice to the parties when it treats a motion to dismiss as a motion for summary judgment, but notice is not required when the parties acquiesce to such treatment. *Mitchell v. McEvoy*, 237 S.W.3d 257, 259 (Mo.App. E.D.2007) (treating appellate review of a motion to dismiss as one for summary judgment where both parties presented matters outside the pleadings, neither party objected, and both parties agreed that the motion was treated as a motion for summary judgment).[2]

■ Here, both parties presented materials outside the pleadings and, as the trial court noted in its order and judgment, "treated the matter as a summary judgment. . . ." Our standard of review is therefore the one which governs the granting of a motion for summary judgment. *Summitt v. Roberts*, 903 S.W.2d 631, 633 (Mo.App. W.D.1995); *Hyatt Corp. v. Occidental Fire & Casualty Co.*, 801 S.W.2d 382, 392 (Mo.App. W.D.1990) ("It is axiomatic that when a party introduces evidence beyond the pleadings, a motion to dismiss its complaint is automatically converted to a motion for summary judgment."). The evidence is viewed in the light most favorable to the non-moving party, and all reasonable inferences from the record are drawn in favor of the non-movant. *Behrenhausen v. All About Travel, Inc.*, 967 S.W.2d 213, 216 (Mo.App. W.D.1998).

## II. Facts and Procedural Background

Viewing the record presented to the trial court in the light most favorable to Appellant, the salient facts are as follows. In 1996, Beneficiary was involved in an automobile accident that left him a quadriplegic. Beneficiary ultimately hired Respondent to represent him in a personal injury lawsuit arising from that accident. The case settled for a large sum of money. Beneficiary's grandmother set up the trust at issue and it was eventually funded with the settlement proceeds. The trust was a "Special Needs Trust" designed to supplement benefits Beneficiary received from various governmental assistance programs. The trust named Merrill Lynch Trust Company and David Potashnick as trustees and designated Respondent the "Trust Protector." The function and duties of a "Trust Protector" is a question of first impression in this Court.[3] Section

---

2. We should note that the far superior practice is for the trial court to give notice to the parties that the matter will be treated as a motion for summary judgment and order them to file amended motions and responses that comply with Rule 74.04. This procedure makes it much easier for the parties and judge at the trial court level (and any reviewing court on appeal) to identify exactly which facts are either contested or agreed upon.

3. As both parties note in their briefs, no recorded Missouri case has ever dealt with the function or duties of a "Trust Protector." The term "trust protector" does appear in the official comment to section 808 of the Uniform Trust Code and states that section 808 "ratif[ies] the use of trust protectors and ad-

visers. . . . 'Advisers' have long been used for certain trustee functions, such as the power to direct investments or manage a closely-held business. 'Trust protector,' a term largely associated with offshore trust practice, is more recent and usually connotes the grant of greater powers, sometimes including the power to amend or terminate the trust." UNIFORM TRUST CODE Section 808 (2005). Missouri has adopted section 808 of the Uniform Trust Code as section 456.8–808, RSMo Cum.Supp.2006. The statute itself does not use the term "trust protector" but more generically states, in pertinent part: "A person, other than a beneficiary, who holds a power to direct is presumptively a fiduciary who, as such, is required to act in good faith with regard to the purposes of the trust and the

5.4 of the trust described the role and duties of the "Trust Protector" as follows:

**5.4** *Trust Protector.* The "Trust Protector" of such trust shall be [**Respondent**]. The Trust Protector's authority hereunder is conferred in a fiduciary capacity and shall be so exercised, but the Trust Protector shall not be liable for any action taken in good faith.

**5.4.1 Removal of Trustee.** The Trust Protector shall have the right to remove any Trustee of the trust under this Agreement. If the Trust Protector removes a Trustee, any successor Trustee appointed by the removed Trustee shall not take office. The Trust Protector may, by written instrument, release the Trust Protector's power to remove a particular Trustee and such release may be limited to the releasing Trust Protector or made binding upon any successor Trust Protector.

**5.4.2 Appointment of Successor Trustee.** The Trust Protector shall also have the right to appoint an individual or corporation with fiduciary powers to replace the removed Trustee or whenever the office of Trustee of a trust becomes vacant.

**5.4.3 Resignation of Trust Protector; Successor.** Any person serving as Trust Protector may resign. The Trust Protector may appoint one or more persons to be successor Trust Protector to take office upon the death, resignation, or incapacity of the Trust Protector or any person serving as protector. The Trust Protector may be one or more persons, whether individuals or corporations. If more than one person is serving as Trust Protector, they shall act by majority.

interests of the beneficiaries. The holder of a power to direct is liable for any loss that results from breach of a fiduciary duty." Section 456.8–808.4, RSMo Cum. Supp. 2006.

When the original trustees resigned, Respondent exercised his power under the trust and appointed the law firm of Patrick Davis, P.C., Patrick Davis ("Davis"), and Daniel Rau ("Rau") as successor trustees. Davis and Patrick Davis, P.C. were originally retained by Beneficiary to represent him on his personal injury claim, but Davis then referred Beneficiary on to Respondent who thereafter handled the suit. Appellant's petition alleges that Davis, Rau, and Patrick Davis, P.C. had referred many legal clients to Respondent over the years and those referrals had netted Respondent substantial fees, a portion of which were then shared back with Davis, Rau, and Patrick Davis, P.C.

Appellant's petition claims that in 2000, Beneficiary and his attorney informed Respondent that Davis, Rau, and Patrick Davis, P.C. were inappropriately spending trust funds.[4] In July of 2001, Davis resigned as trustee. At that same time, Respondent resigned as Trust Protector, but not before appointing Tim Gilmore ("Gilmore") as successor Trust Protector and Brian Menz ("Menz") to take Davis's place as a successor trustee.

In July of 2002, Menz resigned as trustee, and Appellant was appointed as his successor. In April of 2005, Appellant then brought this suit against former trustees Davis, Rau, and Menz and against former Trust Protectors Respondent and Gilmore. In the portions of her petition concerning Respondent, Appellant claimed, *inter alia,* that Respondent had:

breached his fiduciary duties to [Beneficiary] and acted in *bad faith* in one or more of the following respects:

4. Respondent denied this averment in his answer but did not address it in his motion to dismiss or alternative motion for summary judgment. As a result, the assertion remains a contested question of material fact.

a. He failed to monitor and report expenditures;

b. He failed to stop Trustee [sic] when they were acting against the interests of the Beneficiary; and

c. By placing his loyalty to the Trustees and their interests above those of [Beneficiary] to whom he had a fiduciary obligation.

(emphasis added).

Respondent then filed his motion to dismiss or, in the alternative, for summary judgment. Attached to that motion was a copy of the trust, a memorandum in support of the motion, and a statement of uncontroverted facts with accompanying affidavit. The entirety of Respondent's statement of uncontroverted facts consisted of the following six paragraphs:

(1) [Beneficiary] was seriously injured in an automobile accident in 1996 causing him to become a quadriplegic. *See* Exhibit B—Affidavit of [Respondent], ¶ 2.

(2) As a result of the injury, [Beneficiary] hired Patrick Davis and Patrick Davis, P.C. to assist him with a products liability suit who then referred the case to [Respondent] for further handling. *Id.* at ¶ 3.

(3) [Respondent] successfully prosecuted the suit for [Beneficiary], achieving a large settlement. *Id.* at ¶ 4.

(3)[sic] Due to significant medical expenses which had been paid by Medicare and the need to continue [Beneficiary's] eligibility for all available government programs, the proceeds of the settlement were placed in a Special Needs Trust known as the "Robert T. McLean Irrevocable Trust U/A/D March 31, 1999.[sic] *Id.* at ¶ 4.

(4)[sic] Exhibit A is a true and accurate copy of the Robert T. McLean Irrevocable Trust U/A/D March 31, 1999. *Id.* at ¶ 6.

(4)[sic] [Respondent] was designated as "Trust Protector" under the terms of the Trust Agreement. *See* Exhibit A, Trust Agreement ¶ 5.4; Exhibit B—Affidavit of [Respondent] ¶ 7.

By leave of court, Appellant filed an amended response to Respondent's motion that admitted each of these uncontroverted facts, attached three letters allegedly penned by Respondent as exhibits, and included a section entitled "Additional Facts that are Uncontroverted."[5] In reply, Respondent filed a response admitting that the trust designated him as a fiduciary and gave him the "power" to remove trustees and appoint new ones. Respondent also filed an additional legal memorandum in support of his motion to dismiss and/or for summary judgment.

The trial court granted Respondent's motion to dismiss, or in the alternative, for summary judgment in an order and judgment entered July 27, 2005. Appellant thereafter filed a motion for "new trial" or to amend the judgment under Rule 78.04; a motion to request leave to file an amended petition under Rule 55.33; and a motion under Rule 74.04(d) as a case not fully adjudicated on the merits. The trial court originally granted Appellant leave to file her second amended petition, but later determined that its granting of leave was inadvertent and set it aside. Respondent filed a memorandum in opposition to Appellant's motion for "new trial."

On October 6, 2005, the trial court entered another order and judgment denying all of Appellant's post-judgment motions and noting that "all allegations against

5. The original response is not included in the legal file.

[Respondent] and his firm were ruled against [Appellant] and no claims against [Respondent] and his firm are currently pending nor will the Court allow any such claims to be added by amendment."[6] In this second order and judgment, the trial court "clarified" its previous order and judgment which had granted both Respondent's motion to dismiss and motion for summary judgment as follows:

> due to the fact that [Respondent] had no legal duties to supervise the Trustees, the Court found both that [Appellant's] Amended Petition failed to state a claim upon which relief can be granted and that there were no genuine issues of material fact and that [Respondent] was entitled to Summary Judgment as a matter of law. The Court notes that the parties treated the matter as a summary judgment and submitted extensive briefs and statements of material uncontroverted facts. [Respondent] was entitled to summary judgment and the Court's prior ruling will be amended so that it is clear that both the Motion to Dismiss and the Motion for Summary Judgment were granted. Apart from the clear violations of the summary judgment rule, none of the additional facts which [Appellant] has presented for the Court's consideration in the most recent filings would, if considered, change the Court's view that [Respondent] was entitled to

summary judgment. The Court notes that [Appellant] has attempted to assert various additional theories against [Respondent] and his law firm. However, [Appellant] has provided no reason why it could not have asserted those theories earlier and, in any event, none of the purported theories against [Respondent] or his firm in the most recent proposed Amended Petition are legally valid.

The remaining parties settled their claims, and the trial court dismissed the case at the request of the parties. Appellant now appeals the trial court's grant of Respondent's motion to dismiss and alternative motion for summary judgment.

## III. Discussion

Appellant raises six points of alleged error on appeal. Because we find summary judgment should not have been granted for the reason set forth in Appellant's second point, we do not address Appellant's other five points of alleged error.

■ In Point II, Appellant alleges Respondent was not entitled to judgment as a matter of law on her claim for breach of fiduciary duty.[7] An adequately pleaded claim for breach of fiduciary duty consists of the following elements: "1) the existence of a fiduciary relationship between the parties, 2) a breach of that fiduciary

---

6. Although a trial court has discretion in determining whether or not to grant a request for leave to file an amended pleading, Rule 55.33(a) states such leave "shall be freely given when justice so requires."

7. Appellant's point is not a model of compliance with Rule 84.04. It does not state concisely the legal reasons for Appellant's claim of reversible error or explain in summary fashion why, in the context of this case, those legal reasons support the claim of reversible error. However, we are mindful of our obligation to liberally construe the rules of civil procedure so as to promote justice and mini-

mize the number of cases disposed of on procedural grounds. As the granting of a summary judgment is reviewed *de novo* and we can determine the legal defect alleged, we will decide the matter on its merits. *Jos A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 300–02 (Mo.App. E.D.1997). Appellant's point also claims that she had properly asserted a claim for legal malpractice. This portion of her point has no merit. The only reference to legal malpractice is in the title to the count at issue and none of the necessary elements of a claim for legal malpractice are pleaded therein.

duty, 3) causation, and 4) harm." *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 411 (Mo.App. W.D.2000). To prevail on his motion for summary judgment, Respondent, as the defending party, must establish undisputed facts that negate any one of these essential elements. *Horne v. Ebert*, 108 S.W.3d 142, 146 (Mo.App. W.D. 2003).

■ Respondent's motion attacked two of these four essential elements by asserting: 1) neither Missouri law nor the trust agreement created a duty for Respondent to monitor or supervise the trustees; and 2) no causation can be established because the Beneficiary had an alternative means of obtaining relief in that he could have requested a court of equity to remove a trustee for improper actions pursuant to RSMo section 456.190 (1994) (repealed 2004).

We will first address Respondent's argument as to lack of causation. Respondent's suggestions in support of his motion for summary judgment cited now repealed section 456.190 and two cases in support of his claim that he could not have caused any damages Beneficiary may have suffered because Beneficiary had an alternative means of relief available to him. Each of those cases, *Deutsch v. Wolff*, 994 S.W.2d 561, 566–67 (Mo. banc 1999), and *Siefert v. Leonhardt*, 975 S.W.2d 489, 492–93 (Mo.App. E.D.1998), addressed whether a beneficiary had standing to bring a cause of action against a trustee. Neither case dealt with the question of whether any failure to seek such relief would negate the existence of the element of causation in a tort or contract action for damages. Respondent also failed to supply any uncontroverted facts that would have shown how and when either Beneficiary or Appellant could have availed themselves of this now repealed remedy. As the movant below, Respondent had the burden to show a right to prevail as a matter of law on this issue and failed to do so.

■ That failure leaves us with the question of whether Respondent has shown, as a matter of law, that he had no duty to monitor or supervise the trustees.

A legal duty owed by one to another may arise from at least three sources: (1) it may be proscribed by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract (agreement) whether written or oral.

*Lumbermens Mut. Cas. Co. v. Thornton*, 92 S.W.3d 259, 263 (Mo.App. W.D.2002) (citing *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976)).

■ Respondent does not dispute that he accepted the role of "Trust Protector" or that he was designated by the trust as a fiduciary in that role. Respondent simply contends that because Missouri law imposes no specific duties on a "Trust Protector," he had only those duties specifically set forth in the trust agreement and that those express duties did not include any duty to supervise the trustees or direct them to act in any particular manner.

Difficult even for legal commentators to adequately define, the term "duty" has been used in different ways by both commentators and by courts. Prosser used "duty" in terms of the issue of existence of a legal duty but not in terms of what duty or its measure. WILLIAM L. PROSSER & W. PAGE KEETON, THE LAW OF TORTS § 30 at 164 (5th ed.1984). Others have used the term "duty" to encompass and include not only the issue of its existence but also its measure (breach) and its

scope. 1 DAN B. DOBBS, THE LAW OF TORTS § 226 at 578 (2d Ed.2001). Consideration of the uses of the term "duty" is of far more than simply theoretical interest. Proper and clear application of its various uses determines the vital distribution of roles between judge and jury. It is universally agreed (or at least held) that the question of whether a duty exists is a question of law and, therefore, a question for the court alone. Similarly, it is agreed that whether the duty that exists has been breached is a question of fact for exclusive resolution by the jury.

*Thornton,* 92 S.W.3d at 266. Once someone assumes a duty they would not otherwise have, either by contract or conduct, he or she may be held liable in tort if an injury results from a negligent performance of the assumed duty. *See Bowan ex rel. Bowan v. Express Medical Transporters, Inc.,* 135 S.W.3d 452, 457–58 (Mo.App. E.D.2004).

■ Because no legal duties for a trust protector have been imposed by the Missouri legislature, any such duties may only arise from the nature of the relationship between the parties or the language of the trust. The trust does not specify how or when the Trust Protector is to carry out his "authority" to remove trustees and appoint their successors. The trust only states that the Trust Protector's "authority" is conferred in a "fiduciary capacity." One who acts as a fiduciary assumes at least the basic duties of undivided loyalty and confidentiality. *See Klemme v. Best,* 941 S.W.2d 493, 495 (Mo. banc 1997). Although no universal definition of "fiduciary duty" applies to every fact situation, in general, a fiduciary is defined as "[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the *duties* of good faith, trust, confidence, and candor." BLACK's LAW DICTIONARY 658 (8th ed.2004) (emphasis added). After making the Trust Protector a fiduciary, the trust then specifically stated that the Trust Protector will "not be liable for any action taken in good faith." This creation of a qualified immunity from liability for the Trust Protector for actions taken in good faith implies the existence of at least some duty of care and that no such immunity from liability would apply for actions taken in *bad* faith.

An important question of material fact also exists in the instant case as to who this fiduciary duty of good faith is owed *to.* Appellant assumes it is owed to the Beneficiary, but the trust provision that created the position of Trust Protector does not explicitly indicate who or what is to be protected. Another portion of the trust states that "[i]t is the Trustor's intent that this Trust Agreement constitute a plan for the financial management of the trust estate for the benefit of the Beneficiary for his lifetime . . . ." While this text does not provide specific guidance as to the specific fiduciary duties owed by the Trust Protector, it indicates that the trust was created for the purpose of investing Beneficiary's settlement proceeds in a prudent manner and it is possible the Trust Protector's fiduciary duties are owed to the trust itself and might include a duty to protect the trust itself from foreseeable injury.

Because the trust grants the Trust Protector the power to remove and appoint trustees in a "fiduciary capacity," an additional possible inference favorable to Appellant would be that the grantor expected the Trust Protector to exercise his power of trustee removal if the trustee at issue was acting against the purpose of the trust. That the intent of the grantor could have been that the Trust Protector exercise some sort of supervisory duties over the trustees might also be implied by the fact that section 5.4.1 of the trust gave the Trust Protector the ability to nullify a

removed trustee's designation of his or her successor and thereby prevent that person from serving.[8] What duties and responsibilities the grantor intended the Trust Protector to have are not clearly set forth in the language of the trust, and that intent is a significant and contested issue of material fact.

■ In any event, the provision that the Trust Protector will "not be liable for any action taken in good faith" certainly allows an inference that the Trust Protector could be susceptible to liability for actions taken in bad faith; a claim Appellant makes in her petition. Whether Appellant will be able to prove the scope of Respondent's duties of care and loyalty and a breach thereof is not the issue before us. Appellant has pleaded the elements necessary to state a claim for breach of a fiduciary duty by claiming that: 1) the trust agreement provides that the "Trust Protector's authority . . . is conferred in a fiduciary capacity . . . ."; 2) the Trust Protector had a duty to monitor the trustees to make sure they were acting in the best interest of the Beneficiary; 3) because the Trust Protector failed to monitor the trustees they were able to squander trust assets; and 4) the trust assets were improperly depleted in an amount exceeding $500,000. Respondent's statement of six uncontroverted facts does not establish, as a matter of law, that Appellant will be unable to prove at least one of these elements.

The trial court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

PARRISH, and RAHMEYER, JJ., Concurs in result in separate opinion.

---

8. In pointing out these possibilities as favorable inferences, we are not saying that any

JOHN E. PARRISH, Judge, concurring.

I concur in the result reached in the principal opinion. I do so, as did Rahmeyer, J., reluctantly. My reluctance results from the trust's designation of a "trust protector" when that term has not been previously accepted or otherwise defined by statute or court opinions of this state. Trusts are, in my opinion, dangerous devices when they undertake to break new ground insofar as designating obligations or rights of a nature not theretofore established by statute or prior judicial determination. In my opinion, a valid criticism of trusts, in general, is that there is limited supervision for their administration. If no controversy arises, it is unlikely that this would be a problem. However, if a problem or dispute arises with respect to a trust's administration, it is not unusual for lengthy, expensive litigation to follow or for an interested party to conclude that, because of time and expense constraints, it is impractical to pursue judicial determination of a controversy. For that reason I suggest that breaking new ground by using procedures other than those time-proven in the law is something that should not be encouraged.

The principal opinion sets forth the provisions of section 5.4 of the trust. That provision identifies the role of the "trust protector." It states the trust protector's authority (not duties, but authority) is "conferred in a fiduciary capacity." It provides that "the Trust Protector shall not be liable for any action taken in good faith."

*Feinberg v. Adolph Feinberg Hotel Trust,* 922 S.W.2d 21, 25 (Mo.App.1996), explains, when evaluating the reasonableness of a trustee's actions, that "a court must apply any objective standards which

---

such duty was actually created by the language used in this trust.

were expressed in the trust instrument." Or, stated differently, the applicable trust instrument defines the objective standards to be used in evaluating the reasonableness of a trustee's actions. It appears to me that this same standard is apropos for evaluating any authority granted by the terms of a trust. On that basis, I contend that any actions taken (or in this case not taken) by the person denoted as the trust protector can only be judged on the basis of whether his actions, or inactions, occurred in a manner contrary to the precise language in the trust document in question. Here, the trust provides that "[t]he Trust Protector's authority ... is conferred in a fiduciary capacity and shall be so exercised, but the Trust Protector shall not be liable for any action taken in good faith." Thus, absent the trust protector doing something in bad faith, he is not liable for his conduct. Arguably, the petition's allegation that the trust protector acted in bad faith creates a fact issue that could not be determined by what the trial court had before it in the motion for summary judgment. For that reason alone, I concur in the result reached.

NANCY STEFFEN RAHMEYER, Judge, concurring.

I reluctantly concur that the trial court erred in granting summary judgment on Appellant's claim that the Trust Protector breached his fiduciary duty as set out in the contract; however, I write separately to emphasize the limited holding. I agree that there is no duty as a matter of law as a "trust protector," but I do not agree that as a matter of law the duty of the Trust Protector was to the beneficiary, at least not in the traditional sense, nor do I equate the right to remove trustees and appoint successors with a duty to remove trustees and appoint successor trustees. Furthermore, Appellant's allegation that the Trust Protector was informed that the trustees were inappropriately spending trust funds is not the same as an allegation that the Trust Protector was acting in bad faith.

I am simply persuaded that, based on the record before the trial court, the trial court did not have a sufficient basis to determine that the contract did not impose any fiduciary duty on the Trust Protector. As noted by the majority opinion, whether there was a duty to monitor or supervise the trustees only comes about in this case by reason of the contract. I do not believe it is appropriate for this Court to make up the duties of a trust protector out of whole cloth. Only by liberally construing the petition, as we must, do I find the inference that a failure to monitor the trustees was an act of bad faith. Because of the procedural posture of this case, the record is absolutely void of any indication whatsoever what the contract meant by the appointment of a trust protector in this very specific type of trust, a special needs trust. The contract was prepared by a law firm; whatever the reason to add a trust protector to this trust has not been flushed out in the summary judgment motions. When these issues are fleshed out by a more complete record, a determination can be made whether this trustee has any claim against the Trust Protector. For that reason, I concur in the holding that the trial court erred in granting summary judgment on the claim of a breach of fiduciary duty.