**ROBERT T. McLEAN IRREVOCABLE TRUST U/A/D MARCH 31, 1999, by Linda McLEAN, as Trustee, Plaintiff/Appellant,**

v.

**J. Michael PONDER, Defendant/Respondent.**

No. SD 31767.

Missouri Court of Appeals, Southern District, Division One.

Oct. 24, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 15, 2013.

Application for Transfer Denied Feb. 25, 2014.

Edward F. Luby, of St. Louis, MO, and Kenneth Blumenthal and Lopa Blumenthal of Hazelwood, MO, for appellant.

Joseph C. Blanton, Jr., of Sikeston, MO, for respondent.

WILLIAM W. FRANCIS, JR., C.J.

The Robert T. McLean Irrevocable Trust U/A/D March 31, 1999, by Linda McLean, as Trustee ("the Trust"), appeals from the "Judgment" sustaining J. Michael Ponder's ("Ponder") "Motion ... for Directed Verdict at the Close of Plaintiff's Evidence" and granting judgment in favor of Ponder. The Trust asserts eleven points of trial court error. We affirm the Judgment of the trial court.

## Factual[1] and Procedural Background[2]

Robert McLean ("Robert")[3] was involved in an automobile accident in 1996 that left him a quadriplegic. Robert originally hired attorney Patrick Davis to represent him in a product liability suit arising out of the accident. Davis then referred Robert to Ponder, who successfully prosecuted the suit for Robert by settling the case for a large sum of money. The net settlement proceeds were placed in the Trust. Due to significant medical expenses paid by Medicaid and the need to continue Robert's eligibility for all available government assistance, the Trust contained "Supplemental Needs Provisions" under "Article II" of the Trust. Lettie May Brewer, Robert's grandmother, was named as "Trustor"; Merrill Lynch Trust Company, FSB and David Potashnick, were named as "Trustee[s]"; and Ponder was named as "Trust Protector." The Trust provided for three specific powers for the Trust Protector in subparagraphs 5.4.1, 5.4.2, and 5.4.3. The Trust Protector could: (1) remove a Trustee; (2) appoint a Successor Trustee; and (3) resign as Trust Protector.

Section 5.4 of the Trust described the role and duties of the "Trust Protector" as follows:

**5.4 *Trust Protector.*** The "Trust Protector" of such trust shall be [Ponder]. The Trust Protector's authority hereunder is conferred in a fiduciary capacity and shall be so exercised, but the Trust Protector shall not be liable for any action taken in good faith.

**5.4.1 Removal of Trustee.** The Trust Protector shall have the right to remove any Trustee of the trust under this Agreement. If the Trust Protector removes a Trustee, any successor Trustee appointed by the removed Trustee shall not take office. The Trust Protector may, by written instrument, release the Trust Protector's power to remove a particular Trustee and such release may be limited to the releasing Trust Protector or made binding upon any successor Trust Protector.

**5.4.2 Appointment of Successor Trustee.** The Trust Protector shall also have the right to appoint an individual or corporation with fiduciary powers to replace the removed Trustee or whenever the office of Trustee of a trust becomes vacant.

**5.4.3 Resignation of Trust Protector; Successor.** Any person serving as

---

1. We note the Trust's brief violates Rule 84.04(c) in that portions of the Statement of Facts fail to include specific, accurate, or clear references to the record on appeal. In addition, the Trust's brief is full of typographical errors, incomplete sentences, and sentences that appear to have missing words. Many of these errors make it difficult to determine the Trust's argument.

All rule references are to Missouri Court Rules (2013).

2. We borrow freely from this Court's recitation of the facts in *Robert McLean Irrevocable Trust v. Patrick Davis, P.C.*, 283 S.W.3d 786 (Mo.App. S.D.2009), without further attribution.

3. For clarity and ease of analysis, we have chosen to refer to some of the parties by their first names. We mean no disrespect in doing so.

Trust Protector may resign. The Trust Protector may appoint one or more persons to be successor Trust Protector to take office upon the death, resignation, or incapacity of the Trust Protector or any person serving as protector. The Trust Protector may be one or more persons, whether individuals or corporations. If more than one person is serving as Trust Protector, they shall act by majority.

(Bold in original).

The Trust did not provide Ponder with any powers or duties to supervise the Trustees or to direct their activities, but did outline the rights, duties, directives, and powers of the Trustees.

In May 1999, when the original Trustees resigned, Ponder exercised his power under the Trust and appointed Patrick Davis and his law firm, Patrick Davis, P.C. (collectively "Davis"), and Daniel Rau, as Successor Trustees. The Successor Trustees had referred legal clients to Ponder over the years and those referrals netted Ponder fees, a portion of which were then shared with Davis and his firm.

In July 2001, Davis resigned as a Successor Trustee. At that same time, Ponder resigned as Trust Protector, but not before appointing Tim Gilmore ("Gilmore") as Successor Trust Protector and Brian Menz ("Menz") to take Davis's place as a Successor Trustee.

In July 2002, Menz resigned as a Successor Trustee, and Linda McLean ("Linda"), Robert's Mother, was appointed as Successor Trustee.

In 2001, Robert was determined to be incompetent by the Circuit Court of Scott County, and Linda and Paul McLean were appointed Robert's guardians.

In August 2004, the Trust brought suit against all persons who had served either as a Successor Trustee or as Trust Protector under the Trust, including Ponder. The Trust's "First Amended Petition" was filed on April 6, 2005. The petition alleged Ponder had breached his fiduciary duties to Robert and acted in "bad faith" in one or more of the following respects: (1) failed to monitor and report expenditures; (2) failed to stop Trustees when they were acting against the interests of Robert; and (3) placing his loyalty to the Trustees and their interests above those of Robert. The petition also claimed that in the summer of 2000, Robert and his attorney informed Ponder that the Successor Trustees were inappropriately spending Trust funds. While Ponder's firm was a named defendant in the petition, its registered agent was never served, no mention of the firm was made anywhere in the petition, and no relief was requested against the firm.

On May 10, 2005, Ponder filed a "Motion to Dismiss or, in the Alternative, for Summary Judgment." Attached to that motion were copies of the Trust, a memorandum in support of the motion, and a statement of uncontroverted facts with accompanying affidavit.

On July 27, 2005, the trial court sustained Ponder's Motion to Dismiss or, in the Alternative, for Summary Judgment.[4] The trial court's order also struck Ponder's law firm from the caption. The claims against the other defendants were ultimately settled and a "Judgment of Dismissal" was entered by the trial court on January 25, 2007.[5] Several months later,

---

4. The trial court's order was later amended to reflect that Ponder's motion to dismiss and motion for summary judgment were both sustained.

5. In the body of the Judgment of Dismissal the date is denoted as January 25, 2006, which we assume is a typographical error as the document is file-stamped by the circuit clerk as January 25, 2007.

the Trust requested leave to file an appeal out of time, which was granted by this Court on July 25, 2007. The "Notice of Appeal" listed "Linda McLean, as Trustee of Robert T. McLean Irrevocable Trust U/A/D March 31, 1999" as "Plaintiff/Petitioner," and no other appellants were listed.

The matter proceeded on appeal with the Trust as the only appellant. The function and duties of a "Trust Protector" was a question of first impression before this Court in *Robert McLean Irrevocable Trust v. Patrick Davis, P.C.*, 283 S.W.3d 786 (Mo.App. S.D.2009), on appeal.[6] This Court issued its opinion finding that the Trust stated a claim for breach of fiduciary duty and that a genuine issue of material fact existed as to whether Ponder breached a fiduciary duty.[7] *Id.* at 794–95. This Court remanded the case to the trial court to determine the duties owed by Ponder as Trust Protector and to whom he owed those duties.[8] *Id.* at 795. Specifically, this Court ordered the cause "remanded for further proceedings consistent with [the] opinion." *Id.*

Following remand, the Trust sought leave to amend the petition. The trial court denied this request on August 6, 2009. The Trust then filed a "Writ of Prohibition and/or Mandamus" in this Court seeking to overrule the trial court's denial of leave to amend. This Court denied the Trust's writ on August 25, 2009.

On November 16, 2009, Ponder filed a "Motion for Summary Judgment"; the Trust filed its response on January 15, 2010. The trial court denied Ponder's Mo-

---

**6.** As we pointed out previously,

no recorded Missouri case has ever dealt with the function or duties of a 'Trust Protector.' The term 'trust protector' does appear in the official comment to section 808 of the Uniform Trust Code and states that section 808 "ratif[ies] the use of trust protectors and advisers.... 'Advisers' have long been used for certain trustee functions, such as the power to direct investments or manage a closely-held business. 'Trust protector,' a term largely associated with offshore trust practice, is more recent and usually connotes the grant of greater powers, sometimes including the power to amend or terminate the trust." UNIFORM TRUST CODE Section 808 (2005). Missouri has adopted section 808 of the Uniform Trust Code as section 456.8–808, RSMo Cum.Supp.2006. The statute itself does not use the term 'trust protector' but more generically states, in pertinent part: "A person, other than a beneficiary, who holds a power to direct is presumptively a fiduciary who, as such, is required to act in good faith with regard to the purposes of the trust and the interests of the beneficiaries. The holder of a power to direct is liable for any loss that results from breach of a fiduciary duty."

*McLean*, 283 S.W.3d at 789 n. 3.

**7.** The entirety of Ponder's statement of uncontroverted facts consisted of the following six paragraphs:

(1) [Robert] was seriously injured in an automobile accident in 1996 causing him to become a quadriplegic....

(2) As a result of the injury, [Robert] hired Patrick Davis and Patrick Davis, P.C. to assist him with a products liability suit who then referred the case to [Ponder] for further handling....

(3) Ponder successfully prosecuted the suit for [Robert], achieving a large settlement....

(3) [sic] Due to significant medical expenses which had been paid by Medicare and the need to continue [Robert]'s eligibility for all available government programs, the proceeds of the settlement were placed in a Special Needs Trust known as the 'Robert T. McLean Irrevocable Trust U/A/D March 31, 1999.[']...

(4) Exhibit A is a true and accurate copy of the [Trust]....

(4) [sic] [Ponder] was designated as 'Trust Protector' under the terms of the [Trust]....

**8.** *McLean* noted "[w]hether [the Trust] will be able to prove the scope of [Ponder]'s duties of care and loyalty and a breach thereof is not the issue before us." 283 S.W.3d at 795.

tion for Summary Judgment and later set the case for trial on November 29, 2010.

On July 21, 2010, the Trust filed a motion for default judgment or in the alternative to compel, and requesting leave to amend the petition. The trial court allowed the Trust to file its "Fourth (Substituted) Amended Petition" and removed the case from the November 2010 trial setting. This petition alleged Ponder ignored information he received regarding the Trustees, did not investigate the depletion of the Trust assets, did not question the actions of the Trustees or take any action, and as a result the Trust was damaged. Following the filing of the Fourth (Substituted) Amended Petition, Ponder filed a motion to dismiss Counts I, III, IV, V and VI, and all personal claims of Robert.

Following additional briefing on all pending motions, the trial court entered its order dismissing Counts I, III, IV, V and VI, as well as Robert's personal claim as set forth in Count II, as being "barred by applicable statutes of limitations." The trial court denied Ponder's motion to dismiss Count II as to the Trust; i.e., "Linda McLean, Trustee."

Following this ruling, multiple motions were filed by both parties, including motions for summary judgment. The trial court heard argument on all pending motions, and denied all pending motions, including both motions for summary judgment.[9] The case was later set for jury trial on October 26, 2011.

On October 20, 2011, shortly before the jury trial, the trial court issued its legal findings as to Ponder's duties. The trial court deferred to the language of the Trust for direction in determining the duties of the Trust Protector, which in-

cluded section 5.4 (5.4.1–5.4.3) cited above, and noted those provisions gave the Trust Protector "the authority to remove a Trustee." The trial court further found the terms of the Trust evidence "the independence of the Trustee from control or supervision of the Trust Protector." The trial court further found the Trust Protector's authority "is limited to the power to remove[,]" and "under the terms of the trust agreement, the Trust Protector had no obligation to monitor the activities of the Trustee." The trial court went on to note that it was

> not of the opinion that the Trust Protector could simply ignore conduct of a Trustee which threatened the purposes of the trust.

> To the extent that any conduct took place, and to the extent that the Trust Protector was made aware of such conduct, a duty may have arisen by the Trust Protector in his fiduciary capacity to remove a trustee.

On October 25, 2011, the trial court entered its order excluding any testimony by the Trust's expert witnesses, Alexander A. Bove, Jr. ("Bove"), and Hardy Menees ("Menees"), relating to the duties Ponder owed as Trust Protector, because those duties were for determination by the trial court, and excluding any opinions those experts might offer as to whether expenditures from the Trust were appropriate or inappropriate as the Trust failed to disclose such opinions prior to trial.

Trial commenced on October 26, 2011, and the Trust rested on October 28, 2011. Ponder filed his "Motion ... for Directed Verdict at the Close of Plaintiff's Evidence" ("Motion") contending that the Trust had failed to set forth evidence of:

---

9. Due to a conflict in the trial court's schedule, the case was removed from the May 2011 trial setting.

(1) duty; (2) breach of duty; (3) liability; (4) causation; (5) damages suffered as a result of Ponder allegedly failing to remove the Trustees; (6) bad faith on the part of Ponder; or (7) conduct supporting punitive damages. The trial court, after hearing argument of the parties, granted Ponder's Motion. This appeal followed.

The Trust raises eleven claims of trial court error on appeal: (1) dismissing claims of Robert individually and Linda as Trustee, as barred by the statute of limitations, or if barred, the statute of limitations was tolled due to Robert's incapacity; (2) failing to articulate the proper standard of care for fiduciaries; (3) granting Ponder's Motion because the Trust "presented a submissible case"; (4) granting Ponder's Motion because the trial court "failed to acknowledge [Ponder's] involvement in the creation and administration of the Trust and their attorney client relationship"; (5) requiring the Trust to prove bad faith; (6) excluding expert testimony of Menees; (7) excluding expert testimony of Bove; (8) issuing a "withdrawel [sic] instruction" regarding the testimony of James McClellan ("McClellan");[10] (9) excluding and disregarding testimony of Linda as to the "wrongful exclusion of [Robert] from the trust property"; (10) substituting "its own judgment for that of the fact finder finding against the weight of the evidence on facts based on erroneous legal reasoning as Respondents [sic] affirmative defenses were legally inapplicable and should have been stricken"; and (11) "entering a judgment for Ponder because the verdict is only against the weight of the evidence but as made without the evidence and the cumulative affect [sic] of the courts [sic] rulings were against the weight of the evidence and indicate a judicial bias and deprived [the Trust] of a fair trial."

Ponder contends that: (1) Robert's individual claims and Linda's claims as Trustee were barred by the statute of limitations or doctrine of law of the case; (2) the duties of Ponder as Trust Protector were "specifically limited by the terms of the Trust and significantly differed from those of the trustee"; (3) Ponder had no power under the Trust to order Trustees to take or refrain from taking any action; (4) no attorney-client relationship existed between Ponder and the Trust; (5) the Trust was "obligated to show bad faith" and failed to introduce evidence Ponder acted in bad faith; (6) the trial court properly excluded testimony from Menees because the testimony constituted a legal opinion; (7) the trial court properly excluded testimony of Bove because the testimony related to questions of law; (8) a withdrawal instruction regarding McClellan's testimony was proper because the testimony related to claims not before the trial court or regarding damages to the Trust; (9) Linda's testimony regarding the exclusion of Robert from the Trust property was properly excluded because it was not related to any pending claim or damages; (10) and the Trust failed to present evidence to establish the element of damages and failed to "show where in the record [the Trust] presented evidence of damages or identif[ied] any error on the part of the trial court."

---

**10.** McClellan offered testimony that Robert was denied access to his residence on Kevin Lane, which was owned by the Trust, and suffered damages as a result. With respect to this testimony, the trial court issued the following withdrawal instruction:

INSTRUCTION NO. 2

The evidence of the Trustee's refusal to allow [Robert] to return to the Trust property on Kevin Lane in Sikeston, Missouri, and any damages [Robert] personally suffered as a result is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

### The Trust's Points Relied On and Argument

Rule 84.04(c) and (e) require all statements of fact and all factual assertions in the argument have "specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." The Trust failed to consistently provide such references in both its Statement of Facts and Argument sections; oftentimes the Trust's references were unclear, incorrect, or simply did not support the statement or assertion.

The points relied on in the Trust's brief are also deficient in that some points are multifarious and in certain cases, fail to state the legal reasons for a claim of reversible error. While it is within our authority to dismiss this appeal as a whole for these violations of briefing requirements, we are reluctant to do so because Ponder's brief does address some points directly. As a result, we choose to review some, but not all of the Trust's points relied on *ex gratia, In re C.A.M.*, 282 S.W.3d 398, 405 n. 5 (Mo.App. S.D.2009), as opposed to a dismissal.

Because of our disposition of the issues, the Trust's points will be addressed out of order and some points will be addressed together.

### Point X: Damages—the Trust Failed to Prove Damages

We begin our analysis with Point X:
THE COURT ERRED IN GRANTING A JUDGMENT IN FAVOR OF RESPONDENTS AND DIRECTING THE VERDICT HEREIN AND FAILING TO SET ASIDE ITS VERDICT BECAUSE APPELLANT SUBMITTED A SUBMISSIBLE CASE TO THE TRIER OF FACT AND THE COURT IN ERROR SUBSTITUTED ITS OWN JUDGMENT FOR THAT OF THE FACT FINDER FINDING AGAINST THE WEIGHT OF THE EVIDENCE ON FACTS BASED ON ERRONEOUS LEGAL REASONING AS RESPONDENTS AFFIRMATIVE DEFENSES WERE LEGALLY INAPPLICABLE AND SHOULD HAVE BEEN STRICKEN AND AMPLE EVIDENCE OF DAMAGES AND CAUSATION WAS SUBMITTED TO THE COURT.[11]

Ponder's Motion filed at the close of the Trust's evidence included a claim that the Trust failed to set forth evidence of damages suffered as a result of Ponder allegedly failing to remove the Trustees—"the one power he had." The trial court found the "positions presented in [Ponder's] [M]otion and the argument in support thereof" were well taken, sustained the Motion, and entered judgment in favor of Ponder. On appeal, the Trust argues "[t]he [trial c]ourt disregards the weight of the evidence and invaded the province of the fact finder by entering a directed verdict as [the Trust] presented substantial evidence to which reasonable minds can differ." Because we find the Trust failed to present evidence that the alleged breach of fiduciary duty caused harm or damage to the Trust, we find the Trust did *not* make a submissible case and the trial court did not err in granting Ponder's Motion.

### Standard of Review

In reviewing the grant of a motion for directed verdict, this Court 'must determine whether the plaintiff made a submissible case....' *Dunn v. Enterprise Rent–A–Car Co.*, 170 S.W.3d

---

11. This point relied on is one example of the multifarious nature of the Trust's points relied on. The point relied appears as written.

1, 3 (Mo.App.2005). 'A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence.' *Investors Title Co. v. Hammonds*, 217 S.W.3d 288, 299 (Mo. banc 2007). 'An appellate court views the evidence in the light most favorable to the plaintiff to determine whether a submissible case was made.' *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 13 (Mo. banc 1994). 'The plaintiff may prove essential facts . by circumstantial evidence as long as the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred.' *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 900 (Mo.App.1996). 'Whether the plaintiff made a submissible case is a question of law subject to de novo review.' *D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 905 (Mo. banc 2010). Further, with respect to evidentiary rulings, the trial court 'enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal.' *State v. Mayes*, 63 S.W.3d 615, 629 (Mo. banc 2001).

*Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011).

■ When reviewing, we must view the evidence and reasonable inferences from the evidence "in the light most favorable to the plaintiff, giving him or her the benefit of all reasonable inferences[.]" *Englezos v. The Newspress and Gazette Co.*, 980 S.W.2d 25, 30 (Mo.App. W.D.1998). While the granting of a direct verdict is a drastic measure by the trial court, "liability cannot rest upon guesswork, conjecture, or specu-

lation beyond inferences that can reasonably decide the case[.] For this reason, direction of a verdict will be affirmed if any one of the elements of the plaintiff's case is not supported by substantial evidence." *Id.* (internal quotations and citations omitted).

## Analysis

■ At trial, the Trust alleged Ponder breached his fiduciary duty owed to the Trust. The Trust's breach-of-duty claim was based on the Trust's contention that Ponder was made aware in the summer of 2000 that Trustees were spending Trust money inappropriately and depleting Trust assets, but he took no action. The Trust further alleged Ponder ignored the information, did not investigate further into the depletion of Trust assets, and did not question the Trustees' actions. The Trust's Fourth (Substituted) Amended Petition alleged at that time "substantial financial assets of the Trust existed upon information and belief this amount exceeded Five Hundred Thousand dollars ($500,000)." The Trust's petition claimed it was damaged as a direct result of Ponder's breach of fiduciary duty in that: "The Special Needs Trust has been wasted, depleted, and diminished to essentially nothing."

At trial, Menees testified that Ponder should have removed Trustee Davis "in December . . . of 1999 at or around year-end December of 1999."[12]

■ To prevail on a breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary duty; (2) a breach of that fiduciary duty; (3) causation; and (4) harm. *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 411 (Mo.App. W.D.2000). Here, the parties agreed the "harm" to the

---

12. In support, Menees cited correspondence involving Ponder in which he talks "about the possibility of removal . . . [s]o removal is at least in the air and [Ponder] is aware of the possibility and certainly aware of his power to do so."

Trust would be depletion of assets of the Trust; obvious losses dollar wise. *See Zakibe v. Ahrens & McCarron, Inc.,* 28 S.W.3d 373, 383 (Mo.App. E.D.2000) (finding harm to defendant because there was substantial evidence that plaintiff's action resulted in the creation of a large receivable on behalf of American Showcase which over time amounted to $455,184; this amount was never paid to defendant by American Showcase; defendant had to bear the cost of carrying this receivable, which testimony showed was $50,000 per year; and defendant suffered cash flow problems due to this large receivable).

Ponder's Motion alleged there was "absolutely no evidence of any damages ... that were caused as a result of the alleged failure by [Ponder] to remove Mr. Davis[,]" and Ponder's counsel orally argued the same. The trial court allowed the Trust's counsel to respond to the oral argument of Ponder's counsel in support of Motion. With respect to evidence of damages, the Trust alleged Ponder "blew" the Trust's money because "he was contacted on numerous occasions about expenditures.... [H]e was contacted about some of the most egregious expenditures[.]" The trial court asked the Trust's counsel "what testimony did I hear about damages?" and Trust responded "Lots." When questioned for a more specific response, the following discussion took place:

THE COURT: Well, you're going—

[TRUST COUNSEL]: Well, we talked—

THE COURT:—to have to be a—

[TRUST COUNSEL]: Okay.

THE COURT:—little more specific if you want—

[TRUST COUNSEL]: We talked about depreciation—

THE COURT:—me to consider it.

[TRUST COUNSEL]: We talked about depreciation and [Ponder] admitted that the stereo system was a diminished asset.

THE COURT: What was the evidence that it was depreciated?

[TRUST COUNSEL]: Well, he testified that it was, he said—

THE COURT: How much?

[TRUST COUNSEL]: I don't know. He didn't give a precise exact value and I don't believe that the case law requires that we give a precise exact value of the damages. I don't know of any case, it certainly doesn't for punitive damages because that's impossible.

THE COURT: I'm not worried about punitive right now.

[TRUST COUNSEL]: Well, okay, but you know that is what we believe is a submissible position in the case. It would be impossible for us, to precisely calculate damages in an exact amount, it's impossible.

THE COURT: Let me ask you this, we are dealing with a trust and the damages to the trust would be the depletion of the assets.

[TRUST COUNSEL]: Uh-huh.

THE COURT: Okay, this is not a personal injury case where we are talking about pain and suffering—

[TRUST COUNSEL]: No, right.

THE COURT:—and trying to figure out what it might be down the road.

[TRUST COUNSEL]: No.

THE COURT: The trust would have obvious losses.

[TRUST COUNSEL]: Right.

THE COURT: My question to you is, what testimony was there of obvious losses to the trust today dollar wise?

[TRUST COUNSEL]: Well, that's—

THE COURT: I mean there have to be.

[TRUST COUNSEL]: The Merrill Lynch documents, it's obvious the Merrill Lynch documents speak for themselves.

THE COURT: The Merrill Lynch documents show there was a depletion of the trust assets—

[TRUST COUNSEL]: Of almost a million dollars ($1,000,000.00).

THE COURT:—but those documents don't say why.

[TRUST COUNSEL]: I don't believe that they have to say why.

THE COURT: You just think that if the trust depletes that's enough to show bad faith on the part of a Trust Protector who is not a Trustee?

[TRUST COUNSEL]: I think that if a trust is depleted almost in its entirety in a sixteen month period roughly that is absolutely, that is absolutely not only bad faith I'm going to say this I think it's immoral, I think it's—

THE COURT: Well, you didn't have any testimony about immorality today.

[TRUST COUNSEL]: Well,—

THE COURT: I'm not asking you to just make stuff up. Did you have any testimony today of anybody saying that it was immoral?

[TRUST COUNSEL]: Well, it's definitely bad faith. A man who sits by and watches a trust, it's wrong, slowly be depleted almost in its entirety—

THE COURT: You know the problem you have with this is you don't have any evidence as to how it was depleted.

[TRUST COUNSEL]: Well—

THE COURT: You don't have any evidence today—

[TRUST COUNSEL]: Okay.

THE COURT: Excuse me.

[TRUST COUNSEL]: All right.

THE COURT:—of what happened after the correspondence involving Mr. McClellan, whenever that was, and the testimony that we had up to that point was that over a three month period of time there had been a diminution of the trust in the approximate amount of maybe four hundred fifty thousand dollars ($450,000.00), okay.

[TRUST COUNSEL]: Right.

THE COURT: The testimony was that [Ponder] didn't know about anything before that, do you agree with that?

[TRUST COUNSEL]: No, I don't agree with that and—

THE COURT: Okay. I'll just tell you what, that's what the evidence was.

[TRUST COUNSEL]: Okay.

THE COURT: You may not agree, but that's what the evidence was.

[TRUST COUNSEL]: Okay.

THE COURT: Thereafter there was absolutely no evidence of any expenditures made by the Trustees, none.

[TRUST COUNSEL]: Okay.

THE COURT: All that you have is you are saying that the amount of the trust decreased. That's all that you have.

[TRUST COUNSEL]: Okay. Well, I mean I disagree with that.

THE COURT: Tell me what's different. Tell me what you presented in front of the jury—

[TRUST COUNSEL]: Well, we presented—

THE COURT: Let me finish. Not what you think, but what they heard.

[TRUST COUNSEL]: We presented evidence of waste, absolute waste. They spent money; they spent his money on things that were not—

THE COURT: What were they?

[TRUST COUNSEL]:—absolutely necessary. The [sic] hired his own personal friend and ripped my client off.

THE COURT: What testimony was there—

[TRUST COUNSEL]: He hired— There was testimony about Mark Gill. That it was totally unnecessary for his security. Huh—

THE COURT: Now, you have a house out there that you are saying was broken into and you are saying that Mr. Gill's security purpose weren't needed?

[TRUST COUNSEL]: He was there while it happened and they continued to have him on it.

THE COURT: Okay. So what was the value that was assigned—

[TRUST COUNSEL]: Well, they—

THE COURT: Wait a minute, let me ask you a question. Through the testimony today what was the value that was assigned that due to the failure to remove or get rid of Mark Gill that the trust diminished?

[TRUST COUNSEL]: They wasted money. Okay, I will go through their documents, using their documents is the prima facie evidence of the depletion of the trust.

THE COURT: Using their documents—

[TRUST COUNSEL]: Yeah, right.

THE COURT:—do those show checks written?

[TRUST COUNSEL]: They show the check register.

THE COURT: Are you saying that each and every check written was in bad faith and diminution of the trust?

[TRUST COUNSEL]: Well, first of all I want to articulate that's a bad thing. I don't believe that is the standard. I talked to [Menees] and—

THE COURT: We're not talking to [Menees] right now. We're having argument about [Ponder]'s motion.

[TRUST COUNSEL]: Okay.

THE COURT: My question to you is, are you saying that each and every expenditure in that check register—

[TRUST COUNSEL]: Uh-huh.

THE COURT:—is evidence of bad faith on the part of [Ponder]? That's my understanding of what you're saying.

[TRUST COUNSEL]: I don't believe that we have to sit there and specifically say numerically which item—That is almost impossible to do. Huh, Mark Gill, they spent, I mean if I'm reading correctly, it comes out to roughly from three hundred, roughly over forty thousand dollars ($40,000.00) and, I mean, there are other calculations. It also referred to Ronnie Wallace beginning 2/26 to 12/27. These expenditures are completely unnecessary. We think that Mark Gill was an unnecessary expense. Huh—

THE COURT: I'm still trying to figure out any dollar amount.

[TRUST COUNSEL]: I don't believe that we are required—

THE COURT: My understanding of what your argument is to me today is that you don't have to present evidence of damages.

[TRUST COUNSEL]: No, that is not my argument here today, Your Honor. What I'm saying is I don't believe that we have to precisely quantify a precise numerical amount. That would be impossible for us to do. But we can prove that there was waste. Mark Gill for example is one. I think the waste is obvious to anybody that takes a look at it. And we have had several—I mean anybody who looks at this knows it's a total mess; it's a disaster.

THE COURT: Oh this is a disaster I agree with you on that.

[TRUST COUNSEL]: Uh-huh.

THE COURT: But the thing about it is the only thing I can deal with is what's been presented to this jury—

[TRUST COUNSEL]: Right.

THE COURT:—the last three days.

[TRUST COUNSEL]: Right.

The trial court found the Trust "never put anything in front of [the] jury where they could make a determination of any damages caused by [Ponder]." The trial court further noted the Trust had no testimony of applying a dollar figure to any conduct the Trust alleged Ponder performed in bad faith, and the Trust's experts both testified they were not experts on damages. The trial court concluded the court saw "nothing ... which would allow [the trial court] to do anything other than grant the [M]otion."

On appeal, Ponder maintains his position that the Trust failed to "adduce evidence that the breach of fiduciary duty caused damage to [the Trust.]" We agree.

There was no expert testimony presented by the Trust linking Ponder's alleged breach of fiduciary duty with harm or damages to the Trust. Menees testified Ponder should have removed the Trustees in December 1999 for several reasons, but the reason relevant to this appeal was the depletion of the Trust assets through spending twenty-two percent of the whole trust corpus during the last quarter of 1999. However, Menees acknowledged this money was spent *prior to* Ponder being approached by anyone on behalf of the Trust or Robert to remove the Trustees. There was no evidence presented that a new successor trustee, if timely appointed by Ponder in December 1999, could have recouped any of the previously dissipated Trust assets. As a result, the twenty-two percent depletion of the Trust assets cannot, by the Trust's own expert testimony, be a damage the Trust incurred due to Ponder's alleged breach.

Furthermore, Menees never testified (nor did any other witness) as to what would have happened if Ponder had appointed different trustees in December 1999.[13] With respect to damages, Menees specifically testified:

[PONDER'S COUNSEL]: All right. And so you are not here to testify about what damage occurred to the trust by virtue of what you believe was Mr. Ponder's failure to properly remove the Trustee, correct?

[MENEES]: Yes, sir.

Menees gave his expert opinion on Ponder's alleged breach of duty and when that breach of duty took place. However, Menees did not testify as to what damage occurred because Ponder did not remove the Trustees in December 1999, nor did he identify any inappropriate expenditures of the Trust funds after December 1999.

The Trust's argument is that because the Trust decreased in value as shown in the exhibits, the Trust proved damages due to Ponder's alleged breach. In its brief, the Trust argues:

Here, The Trust funds were squandered. Then fiduciaries made no attempt to preserve the trust corpus. On August 31, 1999 the Robert McLean Irrevocable Trust had a value of *at least* 1,022.051.00 In 1999 Respondent Michael Ponder was Trust Protector and owed a fiduciary duty to his beneficiary.

---

**13.** Menees did acknowledge Robert would have had expenses after December 1999 even if Ponder had replaced the Trustees.

The fiduciaries owed duties to preserve the trust.

The Trust contained roughly (180,000) thousand Dollars in 2002 when Michael Ponder was Trust Protector. The Trust was also in debt to nursing staff. The Trust property was damaged The trust corpus had dwindled so to the point where the beneficiary could not maintain his living expenses. Considering the debt this could be considered a total loss. Because of Respondents refusal to insist that the fiduciaries perform their legally required tasks of maintaining, protecting, preserving, and making the trust property the trust purpose was destroyed.

Tim Gilmore's warning to Ponder sadly proved to be true: Pat Davis is going to run this thing into the ground. Robert Mclean, Ronnie Wallace, Johnny Martin James McClellan, and others warned Michael Ponder numerous times begging him to exercise *his fiduciary power.* "You need to appoint somebody.

The trust was destroyed. The record reveals the co-fiduciaries practice of purchasing inappropriate wasteful items such as: Electronics, $147,808.66 was Pets, ($19,655.17.819.) The Trust made $291,767.33 in unnecessary adaptations to the home. $50,000.00 was spent on a fence that should have cost a maximum of $18,000.00. Money was spent on attorney's fees. spent on a Satellite System and expenses. $13,209.64 was spent on household supplies and maintenance. The Trust had one beneficiary.

The fiduciaries made no effort to preserve the trust corpus. Even the most elementary investor could have realized a gain with a trust corpus from which Ponder and Davis started out. Gilmore testified even the most basic returns could yield four or five percent. And the money should have lasted more than year and a half. The Trustee and the Protector completely ignored their own financial data they acquired in the Life Care Plan. Respondents gave no consideration to the inflationary projections of economist Bruce Domazlicky.

The beneficiary was left without adequate funds left to be cared for by his mother. The evidence is that this trust was left without sustainable funds to care for the beneficiary and keep of the house. The house, which never should have been purchased, ultimately foreclosed upon is a result of the mismanagement of funds.

(Emphasis in original) (Taken from Appellant's brief verbatim).

The Trust further argues the trial court "made no analysis of the financial records show [sic] almost a total loss to the trust." [14] However, the Trust fails to specifically state or identify how these records show loss to the Trust due to Ponder's alleged breach of duty, nor did the Trust identify at trial, or even now, what unnecessary spending or purchases were made after December 1999 that would not have been made if Ponder had replaced the Trustees in December 1999.

Although the Trust's brief lists dollar amounts spent by the Trust on various items, this listing amounts to nothing more than a mere recital of the amount spent with no explanation as to why the purchases were inappropriate and how Ponder's alleged breach caused the inappropri-

---

**14.** The Trust cites Exhibits 26 through 29 in support: Exhibit 26 is Stereo One documents showing purchases made in November 1999; Exhibit 27 is an affidavit by Merrill Lynch; Exhibit 28 is documents from the lawsuit foreclosing on the real estate owned by the Trust due to default; also labeled as Exhibit 28 is Mark Gill's criminal records/history; and Exhibit 29 is records from accountants regarding the Trust.

ate purchases.[15] In addition, the exhibits cited by the Trust include purchases made during the twelve months ending December 31, 1999. Any purchases prior to December 31, 1999, cannot be claimed as harm or damage to the Trust in light of Menees' testimony that Ponder should have removed the Trustees in December 1999.[16]

While the Trust maintains it presented "substantial evidence of damages," we find the Trust failed to point us to any evidence of damage and harm to the Trust *due to* Ponder's alleged breach that was before the jury. Rule 84.04(e) requires all factual assertions in arguments supporting the Trust's points include "specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." The Trust provided no such references *pointing to damage or harm caused by Ponder's alleged breach,* which are our tools to verify factual assertions made in support of appellate arguments and are essential to effective functioning of appellate courts. *See Demore v. Demore Enterprises, Inc.,* — S.W.3d —, —, 2013 WL 3509386, at *4 (Mo.App. S.D. July 15, 2013).

A party's mandated compliance with Rule 84.04(e) "provides [this Court] with the tools with which to verify the accuracy of the factual assertions in the argument upon which a party relies to support its argument." *Pattie v. French Quarter Resorts,* 213 S.W.3d 237, 240 (Mo.App. S.D. 2007) (internal quotation and citation omit-

ted). " '[W]ithout such compliance, this [C]ourt would effectively act as an advocate of the non-complying party, which we cannot do. This court cannot spend time perusing the record to determine if the statements are factually supportable.' " *Lombardo v. Lombardo,* 120 S.W.3d 232, 247 (Mo.App. W.D.2003) (quoting *McCormack v. Carmen Schell Constr. Co.,* 97 S.W.3d 497, 509 (Mo.App. W.D.2002)).

The Trust points this Court to the *whole* record of expenditures, but fails to specifically identify the evidence before the jury showing which expenditures would not have happened but for Ponder's negligence. Only by doing the Trust's work could we know if the 875–page transcript and 9 volumes of exhibits (containing more than 475 pages) support its argument in Point X. *Lombardo,* 120 S.W.3d at 247. "We cannot seine this record for that purpose or to remedy this rule violation without becoming a *de facto* advocate...." *Demore,* — S.W.3d at —, 2013 WL 3509386, at *3; *see also Shaw v. Raymond,* 196 S.W.3d 655, 659 n. 2 (Mo.App. S.D.2006).

The element of harm or damages cannot "rest upon guesswork, conjecture, or speculation beyond inferences that can reasonably decide the case[.]" *Englezos,* 980 S.W.2d at 30 (internal quotation and citation omitted). Here, the Trust failed to prove Ponder's alleged breach of fiduciary duty caused harm or damage to the Trust. For that reason, the Trust's Point X is denied.

15. For example, the Trust cites $13,209.64 spent on household supplies and maintenance, but does not explain why these expenditures were inappropriate or cite trial testimony as to why these expenditures were inappropriate. Surely, it was necessary to spend some money on household supplies and maintenance of the home for over a one-year time period. Without further explanation as to what portion of the expenditures were inappropriate, the Trust fails to establish harm or damage to the Trust.

16. For example, the Trust cites $147,808.66 spent on electronics and cites pages 380–82 from the legal file in support thereof. Upon review of those pages, more than two-thirds of the money spent on electronics was spent on or before December 31, 1999.

### Points II, III, IV and V are Moot Since the Trust Failed to Prove Damages

In Points II through V, the Trust argues the trial court erred in granting the directed verdict and judgment in favor of Ponder because the Trust presented a submissible case of Ponder's breach of duty laid out in each point. These points are moot in light of our finding that the Trust failed to present the jury with evidence of damages or harm to the Trust due to the alleged breach of duty. The Trust's Points II through V are therefore denied.

### Point I: Trial Court's Dismissal of Counts I, II, III, IV and V

For its first point, the Trust contends the trial court erred in dismissing the individual claims of Robert, and Linda as Trustee, in Counts I, II, III, IV and V of the Trust's Fourth (Substituted) Amended Petition on February 10, 2011. The Trust argues that the trial court "gave no legal reasons for its determinations as to when statute purportedly expired or legal rationale as to its order. The Court is in error by not applying the doctrine of relation back, or the disability provisions of § 516.170 or § 516.290. to a disabled individual. Because of relation back or disability the statute none Appellants claims are barred." (Taken from Appellant's brief verbatim). We disagree.

### Standard of Review

"Our review of a trial court's decision to grant a motion to dismiss is *de novo.*" *Atkins v. Jester,* 309 S.W.3d 418, 422 (Mo. App. S.D.2010). The trial court's order dismissing the counts relating to the individual claims of Robert and Linda provides the counts were "barred by applicable statutes of limitation." However, we will not disturb a *correct* decision of the trial court simply because the trial court gave a wrong or insufficient reason for the decision. *See Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318 (Mo. banc 1964).

### Analysis

The original petition in this matter was filed on August 6, 2004, and listed only one plaintiff: "LINDA McLEAN, as Trustee of the Robert T. McLean Irrevocable Trust U/A/D March 31, 1999." A First Amended Petition was filed on April 6, 2005, with the same listed plaintiff.

On July 27, 2005, the trial court sustained Ponder's Motion to Dismiss or, in the Alternative, for Summary Judgment, and judgment was entered in favor of Ponder and against the Trust.[17] The claims against the other defendants were ultimately settled and a "Judgment of Dismissal" was entered by the trial court on January 25, 2007. Several months later, the Trust requested leave to file an appeal out of time, which was granted by this Court on July 25, 2007. The Trust, and only the Trust, appealed the trial court's decision to grant Ponder's motion to dismiss and summary judgment. *McLean,* 283 S.W.3d at 786.

On July 27, 2007, a Notice of Appeal was filed listing "Linda McLean, as Trustee" as the only appealing appellant. *See id.* Neither Robert (either individually or through his guardians) nor Linda individually, appealed the trial court's judgment in favor of Ponder. In fact, it was not until this matter was remanded for further proceedings by this Court in *McLean,* that Linda was added "individually" as a plaintiff in the Fourth (Substituted) Amended Petition on September 14, 2010.

---

17. The judgment was entered in favor of Ponder and against the Trust by the trial court's amendment of its order on October 6, 2005.

Rule 81.01(a) provides the "notice of appeal *shall* specify the parties taking the appeal." (Emphasis added). The only party appealing the trial court's previous order granting Ponder's motion to dismiss and summary judgment was the Trust. Following review of the appeal, we ordered the case remanded for further proceedings *consistent with that opinion*, to include *only* the Trust as plaintiff. *McLean*, 283 S.W.3d at 795. For that reason, the individual claims of Linda and Robert were properly dismissed by the trial court.

As to the claims of the Trust dismissed in the counts in issue, we need not address the Trust's alleged error in light of our finding of no damages or harm to the Trust. To prevail in actions for legal malpractice, breach of fiduciary duty, negligent misrepresentation, negligent infliction of emotional distress, and negligent retention as contained in the Trust's counts in issue, a party must show injury, harm or damage. *See Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. banc 1997); *Koger*, 28 S.W.3d at 411; *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010); *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo. App. W.D.2001); *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc 1997). In light of our finding that the Trust failed to present substantial evidence of harm or damage to the Trust, we need not address the Trust's claims as to the dismissed counts.

The Trust's Point I is denied.

### Points VIII and IX: Testimony Regarding Refusal to Allow Robert to Return to Trust Property

In Points VIII and IX, the Trust argues the trial court erred in excluding testimony regarding the refusal to allow Robert to return to his residence, owned by the Trust, and giving a withdrawal instruction regarding that testimony.

### Standard of Review

"Trial courts have broad discretion over the admissibility of evidence and appellate courts will not interfere with their decisions unless there is a clear showing of abuse of discretion." *Pittman v. Ripley County Memorial Hosp.*, 318 S.W.3d 289, 294 (Mo.App. S.D.2010). Abuse of discretion is when the trial court's ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Hancock v. Shook*, 100 S.W.3d 786, 795 (Mo. banc 2003).

Similarly, deciding whether to give a withdrawal instruction is within the trial court's discretion. *Haffey v. Generac Portable Products, LLC*, 171 S.W.3d 805, 810 (Mo.App. S.D.2005).

'Withdrawal instructions may be given when evidence on an issue has been received, but there is inadequate proof for submission of the issue to the jury; when there is evidence presented which might mislead the jury in its consideration of the case as pleaded and submitted; when there is evidence presented directed to an issue that is abandoned; or when there is evidence of such character that might easily raise a false issue.'

*Id.* (quoting *Stevens v. Craft*, 956 S.W.2d 351, 355 (Mo.App. S.D.1997)). "There is no abuse of discretion if reasonable persons could differ about the propriety of the trial court's decision." *Stevens*, 956 S.W.2d at 355.

### Analysis

Both points argue testimony from Linda and McClellan regarding the refusal to allow Robert access to his residence should

have been admitted. The record shows when the issue surrounding this testimony came up, the trial court allowed the parties to present their respective arguments on the matter, and carefully considered the admissibility of this evidence. The basis of the trial court's ruling was that the testimony of Linda and McClellan was not relevant to damage to the Trust. The only plaintiff in the lawsuit was the Trust;[18] and the only claim pending at trial was that Ponder breached the fiduciary duty he owed to the Trust. The trial court found the exclusion of Robert from the property was not relevant to any damages because it would only qualify as non-economic damages to the Trust,[19] and "it's an impossibility for a trust to suffer the [non-economic] damages as defined by Missouri Statutes."

The ruling of the trial court was within its sound discretion, it was not clearly against the logic of the circumstances, and it was not so unreasonable and arbitrary as to shock the sense of justice and indicate a lack of careful, deliberate consideration. The Trust's Points VIII and IX are denied.

### Points VI and VII: Expert Testimony Excluded

The Trust's Points VI and VII involve the exclusion of expert testimony from Menees and Bove regarding Ponder's duties as Trust Protector. The Trust's position regarding the exclusion of expert testimony was not clearly set out in the Trust's brief. The points relied on claim error in entering judgment for Ponder and refusing to set aside Ponder's Motion. However, in the argument sections, the Trust argues "[t]he Order 25, 2011[sic] [exclud-

ing expert testimony regarding Ponder's duties,] is legally and factually inaccurate[,]" and the trial court erred "by refusing to allow [the Trust] to read the deposition of [Bove] into evidence." The Trust then sets forth the proffered testimony from the witnesses. Finally, the Trust closes by arguing the trial court erred in "anointing itself the decider of all disregarding the experience and learned. This is prejudicial and reversible error.... [T]he [trial c]ourt undeniably erred by refusing to allow [the Trust] to read the deposition of [Bove]."

 The Trust failed to mention, much less develop, the trial court's alleged error of "entering judgment" for Ponder and "refusing to set aside [Ponder's] motion for directed verdict disregarding and excluding" expert testimony in the Trust's argument section. *See Citizens for Ground Water Protection v. Porter,* 275 S.W.3d 329, 348 (Mo.App. S.D.2008). The Trust leaves this Court with no choice but to find these claimed legal errors abandoned:

An argument must explain why, in the context of the case, the law supports the claim of reversible error. It should advise the appellate court how principles of law and the facts of the case interact. A claim of legal error in a point relied on which is not supported by any argument is considered abandoned. Plaintiffs' failure to provide the factual context of these alleged errors in either their point relied on or their argument leave this court with nothing more than Plaintiffs' bare assertions of legal error. In this vacuum, any effort by this court to address these claimed legal errors would

---

18. As noted in response to the Trust's Point I, Robert's individual claims were properly dismissed by the trial court prior to trial.

19. Any economic damage to Robert, individually, due to his exclusion from the property, was irrelevant because he was not a party to the lawsuit.

require us to act as an advocate for Plaintiffs by scouring the record for factual support of these claims. This we cannot and will not do.

*Id.* (internal quotations and citations omitted).

Here, the Trust provided nothing more than bare assertions of legal error; i.e., error in entering judgment, with no factual and legal basis for the claimed error. We cannot and will not attempt to piece together the Trust's argument and what the Trust meant because to do so, would require this Court to act as the Trust's advocate.[20]

The Trust's Points VI and VII are denied.

### Point XI

■ The Trust's final point relied on is that:

THE COURT ERRED IN FAILING TO GRANT APPELLANTS MOTION FOR SET ASIDE THE VERDICT AND ENTERING A JUDGMENT FOR RESPONDENT BECAUSE THE VERDICT IS ONLY AGAINST THE WEIGHT OF THE EVIDENCE BUT AS MADE WITHOUT THE EVIDENCE AND THE CUMULATIVE AFFECT OF THE COURTS RULINGS WERE AGAINST THE WEIGHT OF THE EVIDENCE AND INDICATE A JUDICIAL BIAS AND DEPRIVED APPELLANT OF A FAIR TRIAL.

(Taken from Appellant's brief verbatim).

Point XI and the corresponding argument, do not comply with Rule 84.04. First, the point relied on presents multifarious claims—it claims error in failing to grant the Trust's motion to set aside the verdict and entering judgment for Ponder because: (1) the verdict is "only against the weight of the evidence but as made without the evidence"; and (2) the cumulative "affect" of the trial court's rulings were against the weight of the evidence,

---

**20.** If we were to examine any further, the advocate requirement would become even more apparent. "It is within the sound discretion of the trial court to determine the admissibility of expert testimony and we will not reverse unless there is a clear abuse of that discretion." *Hobbs v. Harken,* 969 S.W.2d 318, 321 (Mo.App. W.D.1998). Whether a duty exists is "purely a question of law." *Lopez v. Three Rivers Elec. Co-op., Inc.,* 26 S.W.3d 151, 155 (Mo. banc 2000). *See also McLean,* 283 S.W.3d at 794 (noting it is "universally agreed (or at least held) that the question of whether a duty exists is a question of law and, therefore, a question for the court alone. Similarly, it is agreed that whether the duty that exists has been breached is a question of fact for exclusive resolution by the jury.") (internal quotation and citation omitted). The opinion of an expert on issues of law is generally not admissible because such testimony "encroaches upon the duty of the court to instruct on the law." *Howard v. City of Kansas City,* 332 S.W.3d 772, 785 (Mo. banc 2011) (internal quotation and citation omitted).

It is clear that to the extent the testimony of Menees and Bove involved questions of law, the trial court properly excluded the evidence. However, for our purposes, it is unclear which portions of expert testimony the Trust alleges should have been admitted or how the exclusion of testimony was an abuse of discretion. It appears that the Trust's true complaint with respect to expert testimony is with the trial court's October 25, 2011 order sustaining Ponder's motion in limine "excluding expert testimony of either Bove or Menees as to the duties of [Ponder] under the terms of the trust[.]" However, the Trust randomly cites testimony and/or argument with no further explanation. It is not this Court's role to attempt to develop arguments not raised by the Trust, because to do so would be to become an advocate for the Trust "by speculating on facts and arguments that have not been asserted." *Law Offices of Gary Green, P.C. v. Morrissey,* 210 S.W.3d 421, 424 (Mo.App. S.D. 2006) (internal quotation and citation omitted).

show judicial bias, and deprived the Trust of a fair trial. A point relied on that combines allegations of error not related to a single issue violates Rule 84.04. Improper points relied on, including multifarious points, preserve nothing for appellate review. *Martin v. Reed*, 147 S.W.3d 860, 863 (Mo.App. S.D.2004).

In addition, the Trust failed to fully develop the argument and explain why, in the context of the Trust's case, the law supports the claims of error in the Trust's Point XI. *See Osthus v. Countrylane Woods II Homeowners Ass'n*, 389 S.W.3d 712, 716 (Mo.App. E.D.2012) (holding an argument section should advise the court how the facts of the case and principles of law interact).

Finally, the Trust's argument contains claimed errors not included in the point relied on. For example, the Trust argued:

> The Court error entered its judgment disregarding Appellants motion in limine. Appellant in error allowed Respondent to propound hearsay evidence regarding Tim Gilmore's addiction. Respondents excuse he was aware of Gilmore's habit is the product of Gilmore having the integrity and forthright nature to admit this in testimony. The Court further improperly allowed Respondent to attribute fault to non-parties.

(Taken from Appellant's brief verbatim).

There is no mention of trial court error in ruling on the Trust's motion in limine in the Trust's Point XI, nor mention of error in allowing Ponder to attribute fault to non-parties. Rule 84.04(e) provides the "argument shall be limited to those errors included in the 'Points Relied On.'" *See Osthus*, 389 S.W.3d at 716 (holding "an appellant's brief also must contain an argument section that substantially follows each "Point Relied On[.]"). The argument section of Point XI fails to follow the corresponding point relied on, defeating the very purpose of a point relied on: "to provide the opposing party with notice as to the precise matters that must be contended with and to inform the court of the legal issues presented for review." *Id.* at 715; Rule 84.04(d).

Therefore, because the Trust's Point XI fails to comply with Rule 84.04, it preserves nothing for our review. *Osthus*, 389 S.W.3d at 717. "This court should not be expected either to decide the case on the basis of inadequate briefing or to undertake additional research and a search of the record to cure the deficiency." *Id.* All of these reasons justify our dismissal of Trust's Point XI.

The trial court's Judgment is affirmed.

NANCY STEFFEN RAHMEYER and P.J., DANIEL E. SCOTT, J., CONCUR.