

# Missouri Court of Appeals
## Southern District
### Division Two

IN RE: THE MATTER OF THE )
WILMA G. JAMES TRUST, )
                                  )
DAWN MARKEY JAMES and )
DEREK AARON JAMES, )
                                  )
      Plaintiffs-Appellants, )
                                  )
v. )     No. SD33657
                                  )
DONNA JEAN JAMES, PERSONAL )     **Filed: Feb. 24, 2016**
REPRESENTATIVE of the ESTATE of )
DAREL JOE JAMES, DECEASED, )
DONNA J. JAMES, CHARLES DONN )
JAMES, and CONNIE L. JAMES, )
                                  )
      Defendants-Respondents. )

APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable Ronald D. White, Associate Circuit Judge

**<u>AFFIRMED</u>**

This appeal involves the administration of a trust created by Wilma G. James

("Grandmother") in 1983. Grandmother amended her trust in 2001, and she later replaced

the 2001 amendment with a new amendment in 2007.[1] Grandmother had three children, two

of whom -- Darel Joe James ("Trustee") and Charles Donn James ("Uncle"[2]) -- were still

living at the time of her death. After Grandmother's death, two of her adult grandchildren,

---

[1] We refer to Grandmother's trust, in its final amended form as "the Trust."
[2] Uncle was commonly referred to by his middle name, Donn.

1

Dawn Markey James and Derek Aaron James ("Grandchildren"), filed the underlying lawsuit. Their petition claimed that Trustee breached his fiduciary duty to properly administer the Trust and the breach unjustly enriched Trustee and Uncle ("uncles"), along with the wives of uncles, Donna J. James and Connie L. James (the four of whom we refer to collectively as "Respondents").[3]

Grandchildren present nine points for review. Points I, III through VII, and IX contend that the trial court misapplied or erroneously declared the law in ruling that:

(1) Trustee "did not have any fiduciary duties to [Grandchildren] when he began acting as the successor trustee[,]" because this is contrary to sections 456.7-701.1 and 456.8-801 to 813;[4]

(2) Grandchildren had the burden to prove damages resulting from Trustee's "conveyance of trust real estate to himself, because" such proof "is not required to receive the relief that [Grandchildren] request";

(3) Grandchildren had the burden to prove damages resulting from Trustee's failure to report to Grandchildren, because section 456.10-1001 imposes no such requirement;

(4) Grandchildren "were not entitled to any relief by reason of their failure to object to the schedule of proposed distribution" ("the schedule"), because Trustee did not send a schedule at the first distribution, he concealed "information necessary for them to make an informed decision regarding the [schedule,]" and he sent a schedule that he "knew did not follow the [T]rust directions";

(5) Trustee was permitted "to enforce a $10,000 claim against Derek as an offset for repayment of a loan" from Derek, because the trial court also "found that the loan was from [Grandmother] and not the [T]rust[,]" and section 456.8-811 permits "a trustee to enforce claims of the trust";

(6) Grandchildren "were not entitled to any relief" given the defenses permitted to Respondents under section 456.8-815 or 456.5-505.3

[3] When it is necessary to refer individually to a spouse or grandchild, we will use their first name for the sake of brevity and clarity; no familiarity or disrespect is intended. While this appeal was pending, a suggestion of death was filed regarding Trustee, and Donna was substituted for him in her capacity as personal representative of his estate.

[4] Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. 2013, and all rule references are to Missouri Court Rules (2015).

because these defenses were waived under Rule 55.08 when they were not properly pleaded, and, even if the defenses had been properly pleaded, Trustee is not excused from breaches of fiduciary duty under these statutes;

(7) "[Trustee] did not breach any fiduciary duties by distributing shares of the [T]rust assets in a manner other than *per capita*" because "the trial court failed to give the legally unambiguous term *per capita* its well understood meaning."

Point II contends the trial court erred in finding that Trustee violated no fiduciary duty in selling the real estate in the Trust ("the farm") because "there was no evidence that the [T]rust language relating to the sale of the [T]rust land was ambiguous or had any 'conflict' with an 'earlier provision[.]'" Finally, Point VIII asserts the trial court erred in "failing to rule on issues that [Grandchildren] requested in their Request for Findings and Conclusions" as required by Rule 73.01. Finding no merit in any of Grandchildren's points, we affirm the judgment of the trial court.

**Applicable Principles of Review and Governing Law**

When reviewing a court-tried case, we will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014). "Claims that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involve review of the trial court's factual determinations." *Winston v. Winston*, 449 S.W.3d 1, 6 (Mo. App. W.D. 2014). "We defer to the trial court's determination of witness credibility and recognize that the court is free to accept or reject all, part or none of the testimony presented." *In re Estate of Blair*, 317 S.W.3d 84, 86 (Mo. App. S.D. 2010). "We accept as true the evidence and inferences favorable to the prevailing party and disregard all contrary evidence."

3

*Watermann v. Eleanor E. Fitzpatrick Revocable Living Trust*, 369 S.W.3d 69, 75 (Mo. App. E.D. 2012).

By statute, a trustee "shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with sections 456.1-101 to 456.11-1106." Section 456.8-801.[5] "The construction of a legal document, such as a trust, based upon its language is reviewed *de novo.*" **Winston**, 449 S.W.3d at 7. The existence of a fiduciary duty is also a question of law reviewed *de novo*, but whether such a duty was breached is a question of fact. **Blair**, 317 S.W.3d at 86.

## Facts and Procedural Background

The bench trial occurred in September 2014. In accordance with our standard of review, we summarize the facts in the light most favorable to the judgment and interpret the Trust *de novo*. *See* **Watermann**, 369 S.W.3d at 75 and **Winston**, 449 S.W.3d at 7.

### *Pertinent Trust Provisions*

The Trust provides for Trustee to become the "successor [t]rustee" to Grandmother, the original trustee. Article I of the Trust defines certain terms. "Sons" are defined as Trustee, Uncle, and "George James, deceased." Grandchildren, as "children of George (deceased)[,]" are included with others in the definition of "[g]randchildren[.]"[6]

> "Beneficiaries" for purposes of distributions of the Trust Estate, except as
> provided to the contrary, are [Grandmother's] three (3) Sons, per capita. To

---

[5] Sections 456.1-101 through 456.11-1106 comprise "the 'Missouri Uniform Trust Code'" ("MUTC"), which was passed by the legislature in 2004 and became law on January 1, 2005. Section 456.1-101. No party has questioned the applicability of the MUTC to the Trust, and section 456.11-1106.1(1) provides that after January 1, 2005, the MUTC applies to trusts created before January 1, 2005. *See also* **In re Stephen M. Gunther Revocable Living Trust**, 350 S.W.3d 44, 45 (Mo. App. E.D. 2011) ("[t]he [MUTC] generally applies to all trusts created before, on, or after January 1, 2005, and to all judicial proceedings concerning trusts commenced on or after that date").

[6] Three individuals are specifically named as Trustee's children, one individual is specifically named as a child of Uncle, and all of these individuals are expressly included as grandchildren in the Trust. Grandmother also included as grandchildren "[a]ll other children, if any, born to [Trustee] prior to the time they must be ascertained in order to give effect to the reference to them."

the extent any of [Grandmother's] Sons fail to survive [her], then Beneficiaries shall include such deceased Son(s)' then living child(ren), per capita, to the extent they are also [Grandmother's g]randchildren as defined in this Article.

Articles II and IV provide that the Trust is irrevocable upon Grandmother's death, and "the Trust Estate is to be allocated and distributed[.]" However, Article II also provides that, during her life, Grandmother "retains the power to withdraw Trust property, to amend or revoke the Trust at any time and from time to time, and to require the [t]rustee to transfer to her, or her representative(s), any or all of the Trust Estate."

Article IV.b.1 provides:

[The farm] shall be sold at its Fair Market Value, which, if sold to any of the following individuals, shall be sold in exchange for three (3) equal promissory notes secured by a first deed of trust on such realty and payable in equal monthly installments over ten (10) years at an interest rate of eight percent (8%) per annum. The following individuals only shall have 120 days, 150 days, and 180 days, respectively, from the date of [Grandmother]'s death, the non-assignable right, listed in order of priority, to purchase such real estate under such terms and conditions:

    i.     [Trustee];
    ii.    [Uncle]; or
    iii.   [Derek].

Article IV.b provided that if Trustee, Uncle, or Derek do not buy the farm, a third party would be given priority to purchase a specifically described portion of the farm.

Article IV.c provides:

All Trust Estate not distributed or sold in accordance with the preceding two subsections of this Article shall be distributed equally to the Beneficiaries, with one exception. [Dawn] has already received a significant portion of her inheritance and therefore, her share shall be reduced by twenty-five thousand dollars ($25,000. [sic]) [("the advance")], which amount shall be distributed proportionately to the other Beneficiaries.

Article VIII.b empowers the trustee to sell "any and all property at any time forming a part or all of the Trust Estate in such manner . . . and upon such terms and conditions as the trustee deems advisable."

*Relevant Factual History*

On January 23, 2007, the same date on which the final amendment to the Trust was executed, Grandmother signed and delivered a letter to Trustee that asked him to take over as the successor trustee.

Trustee recalled that in March 2007, Grandmother was willing to loan money to Derek after Uncle had refused to do so. Defendant's Exhibit E, a copy of a check dated March 10, 2007 to Derek in the amount of $10,000, was admitted at trial. The exhibit indicated that the check was drawn on the account for "WILMA G. OR DAREL J. JAMES" and bore Grandmother's signature. During examination by Grandchildren's counsel, Trustee was asked, "So are you saying that [Grandmother] said she was going to loan her money or loan the trust money? Or do you know?" Trustee replied, "I think in that particular case it was her money." Trustee thought there were no terms for repayment except "that if [Derek] didn't pay it back before [Grandmother] died, it would be taken out of his portion of the distribution" from the Trust.

Trustee spent $7,500 from the Trust on two charitable donations in 2011, one to the Snodgrass Cemetery and one to the Vichy Community "organization or park or something." Trustee recalled that Grandmother had "donated money every year to the Snodgrass cemetery, and we had not done it for quite some time." Trustee stated, "[Grandmother] had a C.D. coming due, so I just thought it was time to catch up on her donations." Trustee thought he "probably" discussed this with Grandmother, "[b]ut she always donated money."

6

Grandmother and Trustee's father had previously donated money and "time to the Vichy park" "up until a few years ago[.]" Trustee knew that his parents "were very proud of the Vichy area[,]" and he gave $2,500 from the Trust to improve the park.

Trustee testified that when he became trustee, he had an accountant prepare an accounting for the Trust every year, but he did not communicate this to Uncle and Grandchildren while Grandmother was alive. Grandmother passed away in June 2012. Trustee paid $14,000 from the Trust for Grandmother's funeral expenses at the mortuary owned by Uncle. Derek did not object to the payment of the funeral expenses from the assets of the Trust. Dawn testified that half of the funeral expenses should be paid by a source other than the Trust because she did not believe the funeral cost that much. After Grandmother's death, Trustee obtained "death certificates and cashed in the C.D.s" to distribute some of the Trust money. "A couple of weeks after the funeral[,]" Trustee met with Uncle and Grandchildren. Three days before this meeting, Dawn received a copy of the Trust, and she retained counsel two days before the meeting.

At the meeting, Trustee distributed money from the "C.D.s" in "the way [he] thought the [T]rust wanted it distributed." A handwritten schedule admitted as Defendant's Exhibit O showed $200,000 divided by 3, then one share of that divided again to make distributions of $66,666.67 each to Uncle and Trustee, $33,333.34 to Derek, and $8,333.34 to Dawn ($33,333.34 minus the $25,000 advance).[7] Trustee eventually distributed the $25,000 among uncles and Derek, with 2/5 going to each uncle and 1/5 to Derek.

Trustee told Derek at the meeting that there had been "two $10,000 loans" to Derek -- one in 2007 and another in 2006 -- that Trustee wanted Derek to repay from his share of the Trust, but this "didn't go very well." Trustee thought that Derek recalled only one check

_____
[7] We will refer to these distributions as "the June distribution."

7

in 2007, and Derek did not want to "pay it back[.]"  So, Trustee deducted nothing from Derek's share that day.

Also at the meeting, Trustee informed the others that "as soon as the deal was made [to sell the farm, he] would distribute the money."  No one objected to a distribution of cash proceeds from the sale of the farm.  Trustee recalled that the discussion at the meeting "was that "[Uncle] was going to buy [the farm,]" but price was not discussed.  A June 2012 appraisal of the farm was admitted into evidence as "Defendant's Exhibit I," and it valued the farm at $253,000.

In July 2012, Dawn's attorney sent a letter to Trustee challenging Trustee's appointment as successor trustee before Grandmother's death.  The letter claimed that the execution of the 2007 amendment to the Trust should be voided, and it also requested an accounting.  A response from Trustee's attorney pointed out, among other things, that Grandmother "retained the power to direct under [section 456.8-808] even though the direction might have been contrary to the terms of the [T]rust."  Later that month, Trustee's counsel supplied Dawn's counsel with copies of bank records and other documentation concerning the Trust from 2007 to "the most recent [bank] statement in 2012."  The letter accompanying these documents also advised Dawn's counsel that the uncles intended to buy the farm "[i]n accordance with the provisions of the [T]rust," and that the farm had been appraised at $253,000.  The letter did not further detail the terms of the anticipated purchase by the uncles, and the letter did not indicate that a copy was sent to Derek.

In early August 2012, Dawn's counsel sent a letter to Trustee's counsel requesting additional information, including Trustee's annual accountings and specific accountings for

8

things like certificates of deposit and rents, details of Grandmother's funeral expenses, and details for specific checks written on one of the Trust's bank accounts.

Trustee's counsel replied with a letter providing some additional information responsive to this request, and, regarding the sale of the farm, the letter stated: "We will be closing on the sale of the [farm] in the next few days. After that is done and we have taken steps to prepare a final tax return, I will prepare a proposed distribution and provide you with a copy." The letter does not indicate that a copy was sent to Derek.

Respondents purchased the farm at the end of August 2012. Each couple wrote a check for "$126,000 and some change" toward a purchase price of $253,000. The total netted by the Trust, after settlement costs and a credit for prorated property taxes, was $252,096.07.

When asked why he did not "do the financing over 10 years at 8 percent interest[,]" Trustee replied, "Who's going to pay 8 percent interest, when you can go to the bank and borrow it for 2?" Trustee acknowledged that it was "cheaper" to buy the farm using a bank, and doing so meant that the beneficiaries would not "be collecting any interest."

On September 27, 2012, Trustee's counsel sent letters to Dawn's counsel and Derek ("September letters") enclosing the schedule. The September letters highlighted that $25,000 was being withheld from Dawn's distribution under the Trust, and $10,000 was being withheld from Derek's "distribution as a set off for the balance due on [his] outstanding loan." The September letters also advised the recipients of their right to object to the proposed distribution for "a period of thirty (30) days" following the date of each letter. The letters did not expressly refer to any "termination" of the Trust or to the terms of the sale of the farm to the uncles.

9

The schedule bore the title:

**WILMA G. JAMES TRUST**
**SCHEDULE OF PROPOSED DISTRIBUTION**

The schedule reflected a checking account balance of $299,049.77, plus a "Partial

Distribution" of $175,000.02, such that the Trust was shown as having assets worth

$474,049.79. Attorney and trustee fees (plus taxes) were shown as subtractions, leaving net

proceeds of $457,648.79 to be accounted for in beneficiary distributions "AS OF

SEPTEMBER 15, 2012[.]" The schedule did not expressly identify the proceeds from the

sale of the farm as part of the checking account balance, and it did not specifically refer to

any termination or partial termination of the Trust.

The schedule listed how the net proceeds would be divided, then provided the

following summary of distribution payments to be made to the uncles and Grandchildren:

| [**Uncle**] | | |
|---|---|---|
| 1/3 of Trust | 152,549.60 | |
| Proportionate of $25,000 | 10,000.00 | |
| 1/3 of Repayment of Loan | 3,333.33 | |
| Partial Early Distribution Paid 6/23/2012 | -66,666.67 | |
| **Total to [Uncle]** | | **$99,216.26** |
| | | |
| [**Trustee**] | | |
| 1/3 of Trust | 152,549.60 | |
| Proportionate of $25,000 | 10,000.00 | |
| 1/3 of Repayment of Loan | 3,333.33 | |
| Partial Early Distribution Paid 6/23/2012 | -66,666.67 | |
| **Total to [Trustee]** | | **$99,216.26** |
| | | |
| [**Dawn**] | | |
| 1/6 of Trust Less $25,000 | 51,274.79 | |
| 1/6 of Repayment of Loan | 1,666.67 | |
| Partial Early Distribution Paid 6/23/2012 | -8,333.34 | |
| **Total to [Dawn]** | | **$44,608.12** |

10

**[Derek]**

| | |
|---|---:|
| 1/6 of Trust Less $10,000 | 66,274.80 |
| Proportionate of $25,000 | 5,000.00 |
| 1/6 of Repayment of Loan | 1,666.67 |
| Partial Early Distribution Paid 6/23/2012 | -33,333.34 |
| **Total to [Derek]** | **$39,608.13** |

| | |
|---|---:|
| **TOTAL DISTRIBUTIONS OF TRUST** | **$282,648.77** |

Derek testified that he received the schedule "and spoke to a lawyer" about it, but he sent no objection to Trustee. Dawn testified that she received the schedule, but she "did not" notify Trustee of any objection to it. On October 26, 2012, Trustee issued a check from the Trust to Derek for the listed distribution amount of $39,608.13 and another to Dawn for the listed distribution amount of $44,608.12. The checks were accompanied by letters requesting that each return an enclosed "**RECEIPT OF DISTRIBUTION**" ("receipt") certifying that the individual received the check "as distribution of the [Trust.]" The receipts did not expressly state that the distribution resulted from a termination of the Trust, that consent was given to any other action by Trustee, or that Trustee was being released from any breach of trust. Derek executed his receipt and returned it to Trustee; Dawn did not. Both checks had cleared the Trust's bank account by mid-November 2012.[8]

*Pertinent Procedural History*

Grandchildren's third amended petition alleged that Trustee had breached his fiduciary duties as trustee under sections 456.8-801-804 and 813, and that Respondents had been unjustly enriched by Trustee's administration of the Trust.[9] Respondents' answer

---

[8] We will refer to these distributions as "the September distribution."

[9] The docket included in the legal file does not go back as far as the filing of the original petition; it does show that the case was transferred to the probate division on February 25, 2013. Grandchildren assert that they "filed suit" "[a]pproximately four months" after Trustee mailed out checks as described in the schedule, but they simply cite their third amended petition in support of this statement. Respondents maintain that

included affirmative defenses asserting that Grandchildren were "barred from seeking . . . relief" because: (1) Grandchildren did not object to the schedule within 30 days pursuant to section 456.8-817; and (2) Trustee acted in good faith in making all decisions regarding the Trust.

Before the September 2014 trial began, Grandchildren filed a written "**REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW**" that presented 24 questions. The parties were permitted an opportunity to file after-trial briefs, proposed findings of fact and conclusions of law, and proposed judgments for the trial court to consider.

The trial court's October 2014 judgment found "the issues in favor of [Respondents] and against [Grandchildren]" and contained legal conclusions that followed specific factual findings. A summary of those findings and conclusions will be included in our analysis of Grandchildren's points.

Grandchildren filed a motion to amend the judgment ("the motion") that asserted the "judgment fails to include findings on most of the controverted fact issues specified by [Grandchildren]." The motion specifically requested an amended judgment "that . . . includes findings and conclusions on issues [Grandchildren] requested prior to the hearing[,]" but it identified no particular requests that should have been addressed in the judgment. The motion was denied after a hearing on the matter, and this appeal timely followed.

### Analysis

For ease of analysis, we address Grandchildren's points out of order.

---

Grandchildren filed their lawsuit on January 21, 2013, but they do not cite the record in support of this statement. The trial court found that the original petition was filed on January 21, 2013.

*Point VIII—Request for Findings*

Grandchildren contend in Point VIII that the trial court "failed to issue findings on all issues that [Grandchildren] requested." In support, they rely on Rule 73.01(c)'s provision that a trial "shall include in the opinion findings on the controverted material facts issues specified by the party." Grandchildren further assert that they had requested findings on whether five

> acts of [Trustee's] were breaches of his fiduciary duties: his 2007 assumption of the role of successor trustee; his participation in the 2007 second amendment transaction with [Grandmother] that resulted in increasing his share of the trust distribution; his failure to inform [Grandchildren] at any time prior to [Grandmother's] death that he had assumed the role of trustee; his failure to deposit the rent money he received into the trust account or otherwise credibly account for it; his claim that Derek took a loan from the trust when the trust contains a "spendthrift provision" that forbids loans to beneficiaries, and his act of sending [Grandchildren] a proposed distribution schedule that he knew was not in accordance with trust provisions without telling [Grandchildren] of this fact.

"[T]he failure of a trial court to make such findings mandates reversal only when the trial court's failure to issue requested findings materially interferes with appellate review." *Valentine v. Valentine*, 400 S.W.3d 14, 20 (Mo. App. E.D. 2013). Here, Grandchildren's motion made a broad request that the judgment should be amended to include "findings and conclusions on issues [Grandchildren] requested prior to the hearing[,]" but it identified no particular requests that should have been addressed. More significantly, Grandchildren make no attempt to explain to us how a lack of any particularly requested finding materially interferes with the review they seek on appeal. We are not permitted to formulate such an argument for them. *Cf. Kline v. City of Kansas City*, 334 S.W.3d 632, 648 (Mo. App. W.D. 2011) ("this Court cannot develop arguments for a party that were not made before the trial court and that are still not developed after a full opportunity to brief them on appeal"). Point VIII is denied.

13

*Points II-IV – No Proof of Damages Regarding Sale of the Farm & Failure to Report*

Point II insists the trial court erred in finding that Trustee violated no fiduciary duty by selling the farm as he did because there was "no evidence" that the Trust was ambiguous concerning the sale of the farm.[10] Points III and IV assert the trial court misapplied the law in denying Grandchildren relief because they did not prove damages resulting from, respectively, the conveyance of the farm to Trustee and Trustee's "fail[ure] to report to the beneficiaries[.]" We address these points together because there was no evidence that Grandchildren were damaged or harmed by Trustee's sale of the farm or failure to report.

The trial court concluded that the purchase of the farm by Respondents "was not in strict compliance with Article IV of the [Trust,]" but Grandchildren demonstrated no loss as a result because Trustee "could easily have purchased the [farm] under the first option, and simultaneously conveyed an interest in it to [Uncle]." The trial court concluded that Trustee failed to follow the requirements of Article VIII of the Trust by failing to account to Grandchildren until after Grandmother's death. The trial court also found, however, that an accounting was eventually made "in the course of this litigation" and Grandchildren "have failed to demonstrate any evidence of loss or damage by reason of the Trustee's failure to account between January 23, 2007 and the date of [Grandmother's] death."[11]

"To prevail on a breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary duty; (2) a breach of that fiduciary duty; (3) causation; and (4) harm." ***Robert T. McLean Irrevocable Trust u/a/d March 31, 1999 ex rel. McLean v. Ponder***, 418 S.W.3d 482, 490 (Mo. App. S.D. 2013). "The element of harm or damages cannot 'rest upon

---

[10] Point II is incorrectly couched as an evidentiary challenge. Because the Trust was admitted into evidence, if Grandchildren had proven damages (see discussion *infra*) the appropriate issue on appeal would have been the trial court's legal interpretation of its language.

[11] Based on our resolution of points I and IV, *infra*, we do not need to determine whether Grandchildren qualified as "Beneficiaries" of the Trust before Grandmother died.

guesswork, conjecture, or speculation beyond inferences that can reasonably decide the case[.]'" *Id.* at 496 (quoting *Englezos v. Newspress & Gazette Co.*, 980 S.W.2d 25, 30 (Mo. App. W.D. 1998)).

Regarding the farm, Grandchildren maintain that they "actually did demonstrate damages through [Trustee]'s admission that [Grandchildren] were cheated out of ten year favorable [sic] interest payments[.]" Trustee acknowledged that it was cheaper for him to buy the farm without financing it "over 10 years at 8 percent interest[,]" and that doing so would result in the beneficiaries not collecting interest payments, but he did not admit to cheating anyone in the transaction. More importantly, Grandchildren presented no evidence that Trustee, Uncle, or Derek would have purchased the farm via financing at 8% interest payable to the Trust over 10 years had Respondents been denied the opportunity to simply pay the appraised price for the farm all at once. Uncles did not have to buy the farm. There is no basis short of conjecture for the proposition that Grandchildren were harmed by the sale of the farm to uncles for its appraised value.

Grandchildren also insist that proof of damages is not required "when there is evidence of self-dealing involving a trustee's acquisition of trust property" and argue that a trustee's conveyance of "trust property to himself and his wife, brother, and sister-in-law . . . is presumed to be a conflict of interest under [s]ection 456.8-802.3." Section 456.8-802.3, subsections (1) and (2), provides that "[a] sale . . . is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with" certain persons having the relationship of spouse, sibling, or spouse of a sibling. Section 456.8-802.2 provides, inter alia:

> *Subject to the rights of persons dealing with or assisting the trustee as*
> *provided in section 456.10-1012*, a sale . . . of trust property entered into by

15

the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless [an enumerated exception applies.]"[12]

(Emphasis added.)

The critical question here is not whether the transaction could be "presumed to be affected by a conflict[,]" but whether the sale of the farm was *voidable* given that it did involve the rights of persons other than Trustee. *See* section 456.8-802.2 and .3. Section 456.10-1012.1 and .2 provide:

> A person other than a beneficiary who in good faith assists a trustee, or who in good faith and for value deals with a trustee, without knowledge that the trustee is exceeding or improperly exercising the trustee's powers is protected from liability as if the trustee properly exercised the power.
>
> A person other than a beneficiary who in good faith deals with a trustee is not required to inquire into the extent of the trustee's powers or the propriety of their exercise.

Thus, while the inclusion of a trustee's sibling and the spouses of the trustee and sibling may be considered in determining whether there is a conflict in the transaction, *see* section 456.8-802.3, the *voiding* of such a conflicted transaction under section 456.8-802 is subject to the protections of section 456.10-1012. Grandchildren cite no authority for the proposition that a spouse of a trustee or a spouse of a beneficiary is excluded from the

---

[12] One such exception is that "the transaction was authorized by the terms of the trust[.]" Section 456.8-802.2(1). Grandchildren are correct that Article IV.b.1 provided that if the farm was sold to Trustee as one of three listed individuals, it "shall be sold" using the promissory note(s) requiring 8% interest over the course of ten years and that this is not how the farm was sold. However, we need not determine whether language in: (1) Article VIII.b that authorized Trustee to sell trust property "in such manner and at such time . . . upon such terms and conditions as the [t]rustee deems advisable" and (2) Article VIII.p permitting Trustee to do what he "deems to be for the benefit of said trust and the Beneficiaries thereof, whether or not such acts and things be hereinabove specifically mentioned" would have authorized Trustee to sell the farm to Respondents in the manner it was sold because, as earlier noted, there was no evidence suggesting that the sale of the farm was harmful to the Trust or the Beneficiaries.

16

protection of section 456.10-1012 under the circumstances present in this case, and they assert no error by the trial court regarding any ruling concerning Donna and Connie.

In their argument regarding Trustee's failure to report to them, Grandchildren cite section 456.10-1001 in support of their position that they are "not required to prove damages, only a breach of trust, in order to receive the relief they requested in their [p]etition."[13] First, Grandchildren do not identify specifically what "relief" they were requesting and why that particular form of relief was the appropriate remedy. They also fail to cite any authority for the proposition that *some* relief identified as possible under section 456.10-1001 *must* be ordered in the absence of any demonstrated harm.

Points II, III, and IV are denied.

---

[13] Section 456.10-1001 states:

1.  A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust.

2. To remedy a breach of trust that has occurred or may occur, the court *may*:

(1)  compel the trustee to perform the trustee's duties;

(2)  enjoin the trustee from committing a breach of trust;

(3)  compel the trustee to redress a breach of trust by paying money, restoring property, or other means;

(4)  order a trustee to account;

(5)  appoint a special fiduciary to take possession of the trust property and administer the trust;

(6)  suspend the trustee;

(7)  remove the trustee as provided in section 456.7-706;

(8)  reduce or deny compensation to the trustee;

(9)  subject to section 456.10-1012, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds; or

(10) order any other appropriate relief.

(Emphasis added.)

17

*Point I – Trustee's Fiduciary Duties to Grandchildren*

In their first point, Grandchildren assert that because Trustee "began acting as a trustee and accepted delivery of trust property" in 2007, the trial court erred in declaring that Trustee did not owe "fiduciary duties to [Grandchildren.]" Grandchildren's argument reiterates that "[t]he trial court in this case held that [Trustee] did not owe [Grandchildren] any fiduciary duties."

The page of the judgment cited by Grandchildren does not include a finding that Trustee did not owe Grandchildren any fiduciary duties. The closest language we find on the referenced page states:

> 12. There is no evidence of a significant breach of Trust by [Trustee]. Section 456.7-706 . . . provides that a Court may remove a trustee if the [t]rustee has committed a serious breach of [t]rust. Although [Trustee] failed to account to [Grandchildren] for his transactions as [t]rustee between 2007 and 2012, there is no evidence of any loss or damage suffered by [Grandchildren] as a result thereof. Although [Grandchildren] have requested a finding as to whether a fiduciary relationship existed between [Grandmother], [Respondents[14]] and [Grandchildren], the Court finds no such fiduciary relationship existed because [Grandmother] was the Settlor of the Trust and retained powers to amend or revoke it. The Court further finds and declares that there was no violation of any fiduciary duty by [Trustee] for any of the reasons requested in [Grandchildren's] Request for Findings of Fact and Conclusions of Law.

Even if the trial court's finding that a fiduciary relationship did not exist between Grandmother, Respondents, and Grandchildren was understood to mean that Trustee did not owe Grandchildren any fiduciary duties beginning in 2007 and continuing for the duration of Grandmother's life, Grandchildren cannot obtain a reversal based on Point I as "an appellate court is not to reverse a judgment unless it believes the error committed by the trial court

---

[14] The judgment used the term "Defendants," and we understand this reference to apply to all Respondents instead of solely to Trustee.

18

against the appellant materially affected the merits of the action." ***Lewis v. Wahl***, 842 S.W.2d 82, 84-85 (Mo. banc 1992).

Here, the trial court also found that although Trustee had not accounted to Grandchildren for trust transactions "between 2007 and 2012," there was "no evidence of any loss or damage" resulting from such a failure, and Trustee had not violated "any fiduciary duty" based upon "any of the reasons" that Grandchildren had suggested. As previously discussed, Grandchildren have failed to demonstrate any harm resulting from Trustee's failure to report to them. Thus, whether the trial court alternatively found that Trustee owed no fiduciary duties to Grandchildren before Grandmother died has no legal significance in the resolution of this appeal. Point I is denied.

*Point VII – Trustee's Power to Make Particular Payments*

Point VII contends that the trial court misapplied sections 456.5-505.3 and 456.8-815 in denying Grandchildren "any relief" because Respondents waived any affirmative defenses Trustee might have had based on these statutes by failing to assert them as required by Rule 55.08 and these statutes do not excuse a trustee's breach of fiduciary duty.[15] In the argument supporting the point, Grandchildren narrow the context of the point by stating that "[t]he trial court held that [Trustee] did not breach any of his fiduciary duties by paying [Uncle's] funeral home $14,000 of trust money after [Grandmother]'s death, or by making personal donations out of trust money because of the application of [s]ections 456.8-815 or 456.5-505.3." "[I]f an argument is narrower than a point relied on, our review is limited to

---

[15] Section 456.5-505 is entitled "Creditor's claim against settlor[,]" and subsection .3 identifies circumstances in which a creditor may make a claim against an irrevocable trust despite a spendthrift provision. Section 456.8-815 is entitled "General powers of trustee" and includes powers as provided in the trust along with specified powers as limited in the trust, such as those powers that an owner of property would enjoy. Section 456.8-815.2 specifically provides that "[t]he exercise of a power is subject to the fiduciary duties prescribed by section 456.8-801 to 456.8-814." Section 456.5-505 says nothing about a defense to a claim of breach of fiduciary duty.

19

that argument." ***8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc.***, 292 S.W.3d 439, 445 (Mo. App. E.D. 2009).

As to the pages of the judgment cited by Grandchildren, we see no finding that Grandchildren were denied "any relief" by virtue of these statutes; rather, the trial court concluded that "the gifts or donations that [Trustee] made to the cemetery and community association were allowable under [s]ection 456.8-815 which provides in part that, 'a Trustee, without authorization by the Court, may exercise . . . all powers over Trust property which an unmarried competent owner has over individually owned property.'" The trial court also concluded that "Trustee was authorized to pay the funeral bill in the approximate amount of $14,000.00." The trial court found that "a funeral claim is a priority claim. Recovery of the funeral bill could have been sought by the funeral provider from the Trustee under [s]ection 456.5-505.3[.]"[16]

It was Grandchildren's burden to prove that payment of a particular donation or the funeral bill was a breach of trust, *see **Jarvis v. Boatmen's Nat'l Bank of St. Louis***, 478 S.W.2d 266, 273 (Mo. 1972); it was not Respondent's burden to disprove it. And whether such a duty was breached is a question of fact for the trial court to determine. *See **Blair***, 317 S.W.3d at 86; ***Watermann***, 369 S.W.3d at 75. Significantly, the trial court did not find that either the donations or the payment of the funeral bill constituted breaches of fiduciary duty. Point VII and the argument supporting it are devoid of any explanation as to how the trial court erred in so finding, and Grandchildren do not explain why the alleged error was material. *See **Lewis***, 842 S.W.2d at 84-85 (unless the error "materially affected the merits of the action[,]" there is no reversal).

---

[16] The trial court also found that Derek did not contest the funeral bill at all, and Dawn contested it only as to its amount.

20

Point VII is denied.

### Point V – Failure to Object to the Schedule

Grandchildren's fifth point states, *verbatim*:

> The trial court erred in ruling that [Grandchildren] were not entitled to any relief by reason of their failure to object to [the schedule] because the court erroneously declared and applied the law in that the court failed to consider that [Trustee] did not send any such schedule when he made the first distribution, nor did the court apply the law to [Trustee]'s admitted improper conduct of concealing from [Grandchildren] information necessary for them to make an informed decision regarding [the schedule], and also sending [Grandchildren] a proposed distribution schedule that [Trustee] knew did not follow the [T]rust directions.

The point does not state a concise legal reason for the alleged error as required by Rule 84.04(d)(1)(B), s*ee **Roberson v. KMR Constr., LLC**, 208 S.W.3d 320, 322 (Mo. App. E.D. 2006), and it asserts several error claims in a single point.  Such a multifarious point does not comply with Rule 84.04(d) and fails to preserve an issue for review.  **Spradling v. Treasurer of State**, 415 S.W.3d 126, 134 (Mo. App. S.D. 2013).  Despite the violation, we may choose to review a multifarious point, or a part of it, *ex gratia*.  *See **id.***

The trial court made the following findings relevant to our analysis of this point: After Grandmother's death, Grandchildren "were told that [Uncle] would purchase the real estate for cash, and cash would be distributed."   Grandchildren "were notified in writing of [Trustee]'s intended distribution of the balance of the entire Trust estate" and "of their statutory right to object to the proposed distribution for a period of thirty (30) days[,]" but Grandchildren did not object.  "[N]o credible evidence [indicates] that [Trustee] acted other than in good faith and with the intent to handle the estate in a manner which would carry out the wishes of [Grandmother]."[17]  Based upon these factual findings, the trial court concluded

---

[17] Grandchildren do not challenge the trial court's finding that Trustee acted in good faith in handling the trust estate.

21

that "[e]ach of the [Grandchildren] have waived their right to challenge the form and amount of distribution made by [Trustee] by reason of their failure to object to the [schedule] as provided by [s]ection 456.8-817[.]"

Although Point V fails to state a legal reason why these findings and the court's conclusion were erroneous, the argument that follows the point claims that the limitation on a beneficiary's ability to object to a proposed partial or final distribution under section 456.8-817.1 does not apply to Grandchildren because "exceptions" in section 456.8-817.3 apply instead. We review that claim, *ex gratia*.

Section 456.8-817.1 provides:

Upon termination or partial termination of a trust, the trustee may send to the beneficiaries a proposal for distribution. The right of any beneficiary to object to the proposed distribution terminates if the beneficiary does not notify the trustee of an objection within thirty days after the proposal was sent but only if the proposal informed the beneficiary of the right to object and of the time allowed for objection.

Grandchildren do not challenge the trial court's finding that the schedule informed Grandchildren of their right to object to the proposed distribution and the time allowed for doing so.

Section 456.8-817.3 provides:

A *release* by a beneficiary of a trustee from liability for breach of trust is invalid to the extent:
(1) it was induced by improper conduct of the trustee; or
(2) the beneficiary, at the time of the release, did not know of the beneficiary's rights or of the material facts relating to the breach.

(Emphasis added.)

No evidence in the record indicates that Trustee requested (let alone received) from Grandchildren any release from liability for breach of trust, and Grandchildren do not otherwise address how or why section 456.8-817.3 must be interpreted as an "exception" to

22

section 456.8-817.1.  The case they cite in support of their claim, **John R. Boyce Family Trust v. Snyder**, 128 S.W.3d 630, 637-38 (Mo. App. E.D.  2004), does not construe section 456.8-817.3.  Grandchildren, as the appellants in this case, have the burden of demonstrating trial court error, and they have failed to do so here.  Point V is denied.

*Points VI and IX– Offset Based on a Loan from Grandmother
and Grandchildren's Share of the Trust*

Grandchildren's sixth point claims the trial court misapplied section 456.8-811 in ruling that Trustee "was entitled to enforce a $10,000 claim against Derek as an offset for repayment of a loan . . . [that] the trial court found . . . was from [Grandmother] and not the trust."   Point IX contends the trial court misapplied the law in "fail[ing] to give the legally unambiguous term *per capita* its well understood meaning" when it ruled that Trustee "did not breach any fiduciary duties by distributing shares of the trust assets in a manner other than *per capita*[.]"  We address these points together because they are controlled by the same analysis.

The trial court concluded "that [Derek] was justly indebted to [Grandmother] for the sum of $10,000.00 by reason of the loan that had been made to him, and [Trustee] was entitled to enforce a claim pursuant to [section 456.8-811] by offsetting the sum of $10,000.00 from the distributive share of [Derek]."  The trial court also concluded:

> The Trust provides for an equal division of the Trust assets between
> [Grandmother's] three sons as a class, and an equal division of [George's]
> share among his children as a class.  Accordingly, [Dawn] and [Derek] are
> not entitled to an equal distribution of Trust assets with [Trustee] and
> [Uncle], but rather they are entitled to share equally their father's part of the
> trust estate.

Before a judgment may be reversed, an appellant must demonstrate that "all of the reasons" the trial court relied on as supporting a challenged ruling in the judgment "were

23

wrong." ***City of Peculiar v. Hunt Martin Materials, LLC***, 274 S.W.3d 588, 591 (Mo. App. W.D. 2009). Thus, the failure to challenge an alternative basis supporting the trial court's ruling "is fatal to [the] appeal." ***STRCUE, Inc. v. Potts***, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012). Even if we would otherwise find merit in points VI and IX, the trial court found that Grandchildren had "waived their right to challenge the form and amount of distribution made by [Trustee] by reason of their failure to object to the [schedule] as provided by [s]ection 456.8-817[.]" For the reasons expressed in our analysis of Point V, Grandchildren have failed to demonstrate that this basis for the trial court's ruling was erroneous.

Points VI and IX are also denied, and the judgment of the trial court is affirmed.


DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J. - CONCURS